OPINION NUNC PRO TUNC
 

 Opinion by
 

 Justice LANG-MIERS.
 

 On the court’s own motion, we issue this nunc pro tunc opinion to correct a clerical error in our January 18, 2005 opinion. We vacate our previous opinion. This is now the opinion of the court.
 

 This case involves foreclosure on property located in Sherman, Texas based on a due-on-sale clause. Kaye Adams
 
 [1]
 
 appeals the summary judgment rendered against her in favor of First National Bank of Bells/Savoy (the Bank) and its president, Shirley Mullinix. Adams raises nine issues on appeal generally complaining that the trial court should not have (1) denied her motion for partial summary judgment, (2) granted summary judgment dismissing her wrongful foreclosure claim, (3) granted summary judgment dismissing her request for declaratory relief, (4) granted summary judgment dismissing her breach of contract claim, or (5) denied her special exception to the Bank’s first motion for summary judgment. We affirm the trial court’s judgment. Tex.R.App. P. 43.2(a).
 

 I. BACKGROUND
 

 On May 14, 1998, Adams obtained a $560,000 personal loan to finance her plans to renovate a building she owned in downtown Sherman. Adams gave the Bank deed of trust liens against the property to be renovated and against an adjacent property that was subject to a superior lien. On June 24, 1999, she obtained a second personal loan from the Bank for $31,000. To secure the $31,000 loan, Adams gave the Bank a second deed of trust lien against the property to be renovated and a third deed of trust lien against the adjacent property.
 

 Adams was also the sole shareholder, officer, and director of Adams First Financial, Inc., which was an approved lender for residential loans with the Federal National Mortgage Association (Fannie Mae) and other similar organizations. To satisfy Fannie Mae’s questions about Adams First Financial’s net worth, Adams’ accountant recommended that she transfer the deed for the property to the corporation. In a letter dated July 24, 1998, Adams told Fannie Mae that she had transferred ownership of the property to Adams First Financial and that she would send it a copy of the deed. Adams later signed a warranty deed dated December 1, 1998, transferring ownership of the property to Adams First Financial. She placed the warranty deed in a drawer and never recorded it. Adams did not obtain the Bank’s consent to the transfer.
 

 In September of 1999, Adams stopped renovating the property and put it on the market with an asking price of $2.8 million. But Adams did not receive any offers to buy the property and was unable to find a business partner.
 

 In May or June of 2000, the Bank became aware that the property was listed as an asset on both Adams’ personal financial statement and Adams First Financial’s corporate financial statement. The presi
 
 *851
 
 dent of the Bank, Shirley Mullinix, called Adams and asked if she had transferred title to the property. Adams told her that she had.
 
 [2]
 

 The Bank notified Adams in a June 21, 2000, letter that she was in default because she had conveyed the property in violation of the loan agreements and failed to complete the remodeling of the property. The Bank did not give Adams notice of its intent to accelerate or an opportunity to cure. It accelerated the debt on both notes and demanded payment in full on both notes by July 7, 2000. The attached statement also notified Adams that if the amounts were not paid in full by July 7, 2000, the property would be posted for foreclosure on August 1, 2000.
 

 Adams’ attorney sent a letter to the Bank dated June 23, 2000, stating that the warranty deed transferring the property to Adams First Financial had not been recorded and had been rescinded, and that corrected financial statements would be prepared and sent to the Bank. On July 5, 2000, the Bank received two checks from Adams representing her regular monthly payments on the two notes. But the Bank returned the two checks on July 7, 2000, telling Adams that the loans had been accelerated and that the Bank would not accept the partial payments.
 

 On July 31, 2000, the Bank told Adams that it was postponing the foreclosure until September 2000. It also asked Adams to provide the Bank with the following information by August 11, 2000:
 

 1.Proof from Fannie Mae acknowledging that they are satisfied with the corporation’s new audited Financial Statements, which do not contain this property, [sic]
 

 2. New Financial Statements of the corporation;
 

 3. A plan for completion of construction;
 

 4. A reasonable plan for selling the property;
 

 5. That an evaluation of the value of the property be obtained;
 

 6. All payments of the Notes be brought current;
 

 7. A plan to reduce the credit card debt on [Adams’] personal Financial Statement.
 

 Meanwhile, Adams delivered amended financial statements for Adams First Financial to the Bank that no longer identified the property as a corporate asset. In response, the Bank sent a letter dated August 2, 2000, to Adams’ attorney acknowledging receipt of the amended financial statement for Adams First Financial, and requesting clarification and substantiation of some of the figures that had been changed. Adams did not respond to the Bank’s letters.
 

 On August 14, 2000, the Notice of Trustee’s Sale was posted in Grayson County. The Notice recited that “[b]ecause of a default in the provisions of the Deed of Trust, the Substitute Trustee will sell the property by public auction to the highest bidder for cash at the place and date specified to satisfy the debt secured by the Deed of Trust.” On September 5, 2000, the Bank foreclosed on the property.
 

 
 *852
 
 The foreclosure sale deeds recited “[d]e-fault has occurred in the payment of the Obligations [sic] when due.” The foreclosure sale deeds also stated that “[w]ritten notice of default and of the opportunity to cure the default to avoid acceleration of the maturity of the Note was served on behalf of the Beneficiary by certified mail on each debtor.... ” In addition, the substitute trustee filed composite affidavits stating that “[o]n July 10, 2000, KAYE ADAMS was notified by certified mail that she had a period of not less than twenty days to cure the default before the entire debt secured by the Deed of Trust became due and notice of the proposed foreclosure sale was given.”
 

 On January 5, 2001, Adams sued the Bank for wrongful foreclosure, wrongful credit reporting or defamation, and unjust enrichment. In late January 2001, the substitute trustee filed corrected foreclosure sale deeds that stated that the Bank had requested the enforcement of the deeds of trust because a “[violation of the terms and conditions of the Note and Deed of Trust has occurred.” Also, the corrected foreclosure sale deeds and composite affidavits did not include language stating that Adams had been given notice and the opportunity to cure the default.
 

 On February 5, 2002, Adams amended her petition to include a claim for intentional infliction of emotional distress and a request for declaratory judgment that the foreclosure was wrongful because the language reciting the reason for foreclosure in the foreclosure sale deeds was not correct.
 

 The Bank and Mullinix filed their first motion for summary judgment seeking both a traditional and a no-evidence summary judgment dismissing all of Adams’ claims. Adams responded by filing (1) a motion for partial summary judgment seeking a no-evidence summary judgment on the Bank’s affirmative defenses and a traditional summary judgment on her claims for relief under the Uniform Declaratory Judgment Act; (2) a second amended petition alleging the additional causes of action of breach of contract, negligence, usury, common law fraud, and statutory fraud; and (3) a response to the Bank’s and Mullinix’s first motion for summary judgment, including a special exception to the Bank’s no-evidence portion of its motion contending that it was based on the Bank’s affirmative defense of “unclean hands.” The trial court denied Adams’ motion for partial summary judgment and granted the Bank’s and Mullinix’s first motion for summary judgment, except that it did not dismiss Adams’ claim for wrongful credit reporting.
 

 Before the trial court’s decision on the first motion for summary judgment and in response to Adams’ second amended petition, the Bank and Mullinix filed a second motion for summary judgment seeking dismissal of Adams’ six additional causes of action. The trial court granted the second motion for summary judgment, except that it did not dismiss Adams’ breach of contract claim. The Bank and Mullinix filed their third motion for summary judgment on Adams’ two remaining claims for wrongful credit reporting and breach of contract. Adams responded by filing her third amended petition that added a claim for libel per se. The Bank and Mullinix filed an amended third motion for summary judgment that addressed Adams’ additional claim. The trial court granted the Bank’s motion in its entirety, disposing of all claims, and entered its Final Summary Judgment. None of the three partial summary judgments, the denial of Adams’ motion for partial summary judgment, or the final summary judgment specify the trial court’s basis for its rulings.
 

 II. SUMMARY JUDGMENT
 

 In her first through fourth and sixth through ninth issues on appeal, Adams
 
 *853
 
 appeals the trial court’s summary judgment insofar as it granted the Bank’s request for summary judgment dismissing her claims for wrongful foreclosure and breach of contract and denied her request for partial summary judgment seeking declaratory judgment relief.
 
 [3]
 

 A.
 
 Standard of Review
 

 When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law.
 
 City of Garland v. Dallas Morning News,
 
 22 S.W.3d 351, 356 (Tex.2000). When the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both parties and determine all questions presented.
 
 Id,
 
 When the trial court does not specify the basis for its summary judgment, the appealing party must show on appeal that each independent ground alleged is insufficient to support the summary judgment granted.
 
 See Star-Telegram, Inc. v. Doe,
 
 915 S.W.2d 471, 473 (Tex.1995);
 
 see also Caldwell v. Curioni,
 
 125 S.W.3d 784, 789 (Tex.App.-Dallas 2004, pet. denied);
 
 Orozco v. Dallas Morning News, Inc.,
 
 975 S.W.2d 392, 394 (Tex.App.-Dallas 1998, no pet.). We must affirm the summary judgment if any one of the movant’s theories that supports the summary judgment has merit.
 
 Star-Telegram,
 
 915 S.W.2d at 473.
 

 B. Due-On-Sale Clause and Waiver
 

 In her first and second issues on appeal, Adams argues that the trial court erred by granting the Bank’s first motion for summary judgment dismissing her claim for wrongful foreclosure and denying her motion for partial summary judgment on her declaratory judgment claim seeking a determination that the foreclosure was wrongful. She contends that the $31,000 Note and Deed (1) did not give the Bank the right to accelerate maturity without giving her notice of its intent to accelerate and the opportunity
 
 to cure her
 
 alleged violation of the due-on-sale clause because it was governed by an optional, rather than a mandatory, due-on-sale clause; and (2) did not waive her right to notice of intent to accelerate maturity and her right to an opportunity to cure her alleged violation of the due-on-sale clause. The Bank responds that Adams signed an enforceable waiver of presentation, of notice of intent to accelerate, and of notice of acceleration, and that she contractually waived the opportunity to cure the due-on-sale violation.
 

 1. Applicable Law
 

 a. Rules of Interpretation
 

 The same rules of interpretation that apply to contracts also apply to deeds of trust.
 
 Starcrest Trust v. Berry,
 
 926 S.W.2d 343, 352 (Tex.App.-Austin 1996, no writ);
 
 see also Sonny Arnold, Inc. v. Sentry Savings Assoc.,
 
 633 S.W.2d 811, 815 (Tex.1982)(a mortgage is governed by the same rules of interpretation that apply to contracts). A court’s primary duty in construing a note and deed of trust, as when construing a contract, is to ascertain the parties’ intent from the instrument’s language.
 
 See Coker v. Coker,
 
 650 S.W.2d 391, 393 (Tex.1983). In ascertaining the drafter’s intent, the court must examine the document as a whole and strive to give every part of it effect.
 
 See id.; Forbau v. Aetna Life Ins. Co.,
 
 876 S.W.2d 132, 133 (Tex.1994). Words should be given their
 
 *854
 
 plain meaning based on the way they are used, unless it appears that doing so would defeat the intention of the parties.
 
 See Reilly,
 
 727 S.W.2d at 529 (citing
 
 Fox v. Thoreson,
 
 398 S.W.2d 88, 92 (Tex.1966)).
 

 b. Waiver
 

 A debtor may waive his right to demand, presentment, and notice.
 
 See Shumway v. Horizon Credit Corp.,
 
 801 S.W.2d 890, 892 (Tex.1991). A waiver of presentment, notice of intent to accelerate, and notice of acceleration is effective only if it is clear and unequivocal.
 
 Id.
 
 at 893. To meet this standard, a waiver provision must specifically and separately state the rights surrendered.
 
 Id.
 
 Waiver of “demand” or “presentment,” and of “notice” or “notice of acceleration,” in just so many words, is effective to waive presentment and notice of acceleration.
 
 Id.
 
 But waiver of “notice” or even “all notice” or “any notice whatsoever,” without more specificity, does not unequivocally convey that the borrower intended to waive both his right to notice of acceleration and his right to notice of intent to accelerate.
 
 Id.
 

 2. Application of the Law to the Facts
 

 The foreclosure was based on a claimed violation of the due-on-sale clauses in the Deed of Trust securing the Note for the $31,000 loan and in the $31,000 Note. The Note also contains a waiver clause that states as follows:
 

 On default in the payment of this Note or in the performance of any obligation in any instrument securing or collateral to it, the unpaid principal balance and earned interest on this Note shall become immediately due at the election of [the Bank]. [Adams] and each surety, endorser and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notice of acceleration of maturity, protests, and notices of protest. It will not be necessary for any holder hereof, in order to enforce payment of the Note, to first institute suit or exhaust its remedies against any security herefor.
 

 Adams admits that this language is specific enough to be effective. But she contends that it does not apply to violation of the due-on-sale clause because it is not located in the same paragraph. We disagree.
 

 The Note and the Deed of Trust must be construed together because they were signed by the same parties on the same day, identify the same subject matter, each document references the other, and the deed of trust is identified as the security for the note.
 
 The Cadle Co. v. Butler,
 
 951 S.W.2d 901, 909 (Tex.App.-Corpus Christi 1997, no pet.). The waiver clause in the $31,000 Note refers to default “in the performance of any obligation.” The use of a lowercase “o” for the word obligation indicates that the parties did not intend the word to refer to the title of a particular section (ie., the section entitled “Grantor’s Obligations” in the Deed securing the $31,000 loan). And the use of the word “any” indicates an indifference regarding the particular one or ones that may be selected.
 
 See
 
 I The Oxfoed English DICTIONARY 538 (2d ed.1989). We conclude that the language of the waiver clause applies to default in the performance of any obligation which includes violation of the due-on-sale clauses, and that Adams waived her right to notice of intent to accelerate and an opportunity to cure. Because of our decision regarding the waiver clause, we do not reach the issue of whether the optional or the mandatory due-on-sale clause governs.
 

 We decide Adams’ first and second issues against her.
 

 C. Violation of the Due-On-Sale Clause
 

 In her third issue on appeal, as she did in her first and second issues, Adams ar
 
 *855
 
 gues that the trial court erred by granting the Bank’s first motion for summary judgment dismissing her wrongful foreclosure claim and by denying her motion for partial summary judgment seeking a declaratory judgment that the foreclosure was wrongful. She contends in her third issue that she demonstrated there was no transfer triggering the due-on-sale clause as a matter of law. Alternatively, she argues that there were issues of fact precluding summary judgment because (1) the transfer was rescinded and she was not in default at the time of the foreclosure; (2) she transferred the property before she signed the Note for the $31,000 loan and that she could not have violated a later signed due-on-sale provision; and (3) there were different reasons given by the bank for the foreclosure in the original foreclosure deeds and affidavits, and in the correction deeds.
 

 1. Transfer of Title
 

 Adams contends that there was no transfer. She also contends that there was a transfer, but because the transfer occurred before she obtained the $31,000 loan, there was no transfer after the note was executed and no sale in violation of the terms of the $31,000 Note. The Bank responds that Adams’ deposition testimony, her letters, her accountant’s letters, and Adams First Financial’s tax return demonstrate a transfer occurred. The Bank contends there is no issue of fact that it foreclosed because of the due-on-sale clause, and that the timing of the transfer does not raise an issue of fact.
 

 a. Applicable Law
 

 A conveyance of an interest in real property must be in writing, signed by the grantor, and delivered to the grantee.
 
 See
 
 Tex. Prop.Code Ann. § 5.021 (Vernon 2003). A deed does not have to be recorded to convey title.
 
 Thornton v. Rains,
 
 157 Tex. 65, 299 S.W.2d 287, 288 (1957);
 
 Burris v. McDougald,
 
 832 S.W.2d 707, 709 (Tex.App.-Corpus Christi 1992, no writ). A conveyance is effective and title is transferred when the following has occurred: (1) execution of the deed, and (2) delivery of the deed.
 
 Stephens County Museum, Inc. v. Swenson,
 
 517 S.W.2d 257, 261 (Tex.1974);
 
 Hicks v. Loveless,
 
 714 S.W.2d 30, 32 (Tex.App.-Dallas 1986, writ ref'd n.r.e.);
 
 see also Rothrock v. Rothrock,
 
 104 S.W.3d 135, 138 (Tex.App.-Waco 2003, pet. denied).
 

 Two elements must be established to prove delivery of a deed: (1) the deed must be delivered into the control of the grantee, and (2) the grantor must intend the deed to become operative as a conveyance.
 
 Binford v. Snyder,
 
 144 Tex. 134, 143-44, 189 S.W.2d 471, 475 (1945);
 
 Hicks,
 
 714 S.W.2d at 32;
 
 see also Bellaire Kirkpatrick Joint Venture v. Loots,
 
 826 S.W.2d 205, 213 (Tex.App.-Fort Worth 1992, writ denied);
 
 Raymond v. Aquarius Condominium Owners Ass’n, Inc.,
 
 662 S.W.2d 82, 91 (Tex.App.-Corpus Christi 1983, no writ);
 
 Bennett v. Mings,
 
 535 S.W.2d 408, 409 (Tex.Civ.App.-Texarkana 1976, writ ref'd n.r.e.).
 

 The question of whether a deed has been delivered is primarily one of the grantor’s intent.
 
 Raymond,
 
 662 S.W.2d at 91;
 
 Bennett,
 
 535 S.W.2d at 409. Without the required grantor’s intent, the manual delivery of the deed to the grantee does not pass title.
 
 Bennett,
 
 535 S.W.2d at 409. The intent of the grantor is determined by examining all the facts and circumstances preceding, attending, and following the execution of the deed.
 
 Stephens,
 
 517 S.W.2d at 262;
 
 Rothrock,
 
 104 S.W.3d at 138; see
 
 Thornton,
 
 299 S.W.2d at 288. If delivery is completed with the required intention, a subsequent change of intention will not affect the transaction. 30 Tex. JuR. 3d at § 30 (citing
 
 Thornton,
 
 157 Tex. 65, 299 S.W.2d
 
 *856
 
 287). Also, a secret or undisclosed intention of the grantor not to divest himself of title will not prevent a duly executed and delivered deed from taking effect. 30 Tex. JuR. 3d
 
 Deeds
 
 § 30 (citing
 
 Ferrell v. Delano,
 
 144 S.W. 1039 (Tex.Civ.App.-San Antonio 1912)).
 

 What constitutes a delivery is a question of law.
 
 Ragland v. Kelner,
 
 148 Tex. 132, 221 S.W.2d 357, 359 (1949);
 
 see also Rothrock,
 
 104 S.W.3d at 138. Whether there has been a delivery of a deed is a fact question.
 
 Ragland,
 
 148 Tex. 132, 221 S.W.2d at 359;
 
 see also Rothrock,
 
 104 S.W.3d at 138.
 

 b. Application of the Law to the Facts
 

 The property was originally Adams’ personal asset. In late May or early June of 1998, the equity in the property was recorded as an asset of Adams First Financial, which was made effective as of January 1998. In a letter dated July 24, 1998, Adams advised Fannie Mae that “the ownership [of the property] has been transferred, however, even if not by deed yet, from me to [Adams First Financial],” and that she would forward them a copy of the deed. On December 1, 1998, Adams signed the warranty deed transferring the property to Adams First Financial. Adams also furnished the Internal Revenue Service, the Veteran’s Administration, Fannie Mae, and the Bank corporate financial statements listing the property as an asset of Adams First Financial. In June 2000, when the Bank asked Adams if she had transferred the property, she responded that she had. Before the Bank foreclosed, her accountant also represented to Adams in a letter she forwarded to the Bank that the property was transferred in May or June of 1999.
 
 [4]
 

 Adams contends that her accountant’s statement that the property was placed on the corporate books, not that title had been transferred, raises an issue of fact regarding whether the property was transferred. She also argues that her deposition testimony shows that she did not intend to transfer the property, although she fails to point this court to where in the record that testimony may be found. And she contends that because the letters and deed indicate different dates for the transfer there is an issue of fact regarding whether it occurred. But this evidence does not create an issue of fact because it merely indicates she may have subsequently changed her intention to transfer the property or that she secretly never intended to transfer the property. A subsequent change of intention or a secret, undisclosed intention not to transfer the property, does not affect whether the property was actually transferred.
 
 See
 
 30 Tex. Jur. 3d
 
 Deeds
 
 § 30 ((citing
 
 Thornton,
 
 157 Tex. 65, 299 S.W.2d 287 and
 
 Ferrell,
 
 144 S.W. 1039)). And, although she never recorded the warranty deed, it is not essential to record a deed to convey title.
 
 See Thornton,
 
 299 S.W.2d at 288. We conclude that Adams did not raise a genuine issue of material fact regarding whether there was a transfer.
 

 2. Timing of Transfer
 

 Adams also argues that there is an issue of fact regarding whether she actually violated the due-on-sale clause because she transferred the property before, and not after, she signed the note and could not have been in violation of the terms of a note she had not yet signed. But the issue presented to the trial court was whether the Bank foreclosed because of the due-on-sale clause, not that she did
 
 *857
 
 not own the property when she obtained the $31,000 loan. A claim that was not presented to the trial court cannot be considered on appeal.
 
 See Blaschke v. Citizens Medical Center,
 
 742 S.W.2d 779, 781 (Tex.App.-Corpus Christi 1987, no writ). The issue of whether she violated the due-on-sale clause because she signed a note and deed after she had already transferred the property was waived.
 

 3. Reasons for Foreclosure
 

 Adams argues that there are genuine issues of material fact that “preclude a take-nothing summary judgment on her wrongful foreclosure claim” because the Bank gave different reasons for foreclosing in the foreclosure sale deed and the corrected foreclosure sale deed: in the originally filed documents the foreclosure was because of a default in payment and in the corrected documents the foreclosure was because of the unauthorized transfer of the property.
 

 a. Applicable Law
 

 A correction deed is filed for the sole purpose of correcting some facial imperfection in the title.
 
 Joe T. Garcia’s Enterprises, Inc. v. Snadon,
 
 751 S.W.2d 914, 916 (Tex.App.-Dallas 1988, writ denied);
 
 see also, e.g., Sanchez v. Telles,
 
 960 S.W.2d 762, 768 (Tex.App.-El Paso 1997, writ denied). A correction deed has a definite legal effect.
 
 Borden v. Hall,
 
 255 S.W.2d 920, 925 (Tex.Civ.App.-Beaumont 1951, writ ref'd n.r.e.). Proof of the fact that a correction deed was filed and recorded raises a prima facie presumption of the facts recited.
 
 See McAnally v. Texas Co.,
 
 124 Tex. 196, 76 S.W.2d 997, 1000 (1934)(filed and recorded correction deed raised prima facie presumption that correction deed was accepted),
 
 affirming
 
 32 S.W.2d 947, 952 (Tex.Civ.App.-Eastland 1930, writ granted). Ordinarily, a correction deed relates back to the date of the document that it purports to express more accurately.
 
 E.g., Sanchez,
 
 960 S.W.2d at 768;
 
 Borden,
 
 255 S.W.2d at 925.
 

 b. Application of the Law to the Facts
 

 Adams did not contend before the trial court that the different recitations in the foreclosure deeds created an issue of fact precluding summary judgment on her wrongful foreclosure claim. Instead, Adams claimed that these different recitations created an issue of fact that precluded summary judgment dismissing her claim of “estoppeVwaiver” because of the original foreclosure deed.
 
 [5]
 
 But even if she had raised the issue below, she has not explained or cited any authority that supports her argument that estoppel by deed applies to the original deed and affidavit when the deed and affidavit have expressly been corrected, as occurred here.
 

 The original foreclosure sale deeds and the substitute trustee’s composite affidavits stated that the deeds of trust were being enforced due to default in the payment of the obligations. However, the record also shows that the substitute trustee testified that he used the wrong forms for the foreclosure sale deeds and that he filed the corrected foreclosure sale deeds when he discovered his mistake so that they accurately reflected that enforcement was due to a violation of the terms and conditions of the note and deed, as stated in the Notice of Sale. Both correction foreclosure sale deeds include the following language:
 

 THIS DEED IS MADE IN PLACE OF AND TO CORRECT A FORECLO
 
 *858
 
 SURE SALE DEED FROM GRANTOR TO GRANTEE HEREIN DATED SEPTEMBER 5, 2000, AND RECORDED IN VOL. 2972, PAGE 528, REAL PROPERTY RECORDS, GRAYSON COUNTY, TEXAS. BY INADVERTENCE OR MISTAKE THE VIOLATION OF THE NOTE AND DEED OF TRUST WAS INACCURATELY STATED. THIS CORRECTION FORECLOSURE SALE DEED IS MADE BY GRANTOR TO CORRECT THAT MISTAKE AND IS EFFECTIVE AS OF SEPTEMBER 5, '2000, AND IN ALL RESPECTS CONFIRMS THE FORMER FORECLOSURE SALE DEED.
 

 Adams points to no evidence other than the original foreclosure sale deed and does not direct this court to any authority to support her contention that she raised a genuine issue of material fact regarding the Bank’s reasons for foreclosing on the property to avoid summary judgment on her wrongful foreclosure claim. We conclude that Adams did not raise a genuine issue of material fact below based on the different reasons given by the bank for the foreclosure.
 

 4. Effect of Rescission
 

 Adams argues that because she rescinded the warranty deed, there was no default at the time of foreclosure and that there was a fact issue about whether the foreclosure was wrongful. The Bank responds that Adams’ attempt to rescind the transfer was too late and is of no consequence to this appeal. We agree with the Bank. Because of the waiver Adams signed, she did not have a right to cure the default by rescinding the transfer. As a result, the claimed rescission did not raise an issue of fact regarding whether the foreclosure was wrongful.
 

 In sum, Adams has not demonstrated that she raised an issue of fact regarding whether she -transferred the property. We decide Adams’ third issue against her.
 

 D. Waiver of Right to Accelerate
 

 In her fourth issue on appeal, Adams argues that the trial court erred by granting the Bank’s first motion for summary judgment and dismissing Adams’ claim that the Bank waived the right to accelerate the notes. Adams argues that there are genuine issues of fact regarding whether the Bank waived its right because of its silence or inaction in response to her conduct. The Bank responds that it did not waive its right to accelerate for violation of the due-on-sale clauses and, in this case, waiver is a question of law, not of fact.
 

 1. Applicable Law
 

 Texas Rule of Appellate Procedure 38.1(h) requires appellate briefs to “contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.” Tex.R.App. P. 38.1(h). Points of error are waived if an appellant fails to support his contention by citations to appropriate authority, or cites only to a single non-controlling case.
 
 See Sunnyside Feedyard, L.C. v. Metropolitan Life Ins. Co.,
 
 106 S.W.3d 169, 173 (Tex.App.-Amarillo 2003, no pet.);
 
 Wolfe v. C.S.P.H., Inc.,
 
 24 S.W.3d 641, 647 (Tex.App.-Dallas 2000, no pet.).
 

 2. Application of the Law to the Facts
 

 In support of her position, Adams claims that the Bank accepted her plan to transfer the property to a corporation as a prerequisite to the $560,000 loan; understood that she used Adams First Financial as her alter ego to pay personal debts; and was furnished copies of documents in the spring of 1999 showing that she had transferred the property to Adams First Financial. She argues that because the
 
 *859
 
 Bank remained silent in the presence of this nonconforming conduct it waived its right to accelerate, and it was required to give her notice and an opportunity to cure before foreclosure. But Adams does not provide citations to the record directing this court to where this evidence can be found. As a result, she has not provided a clear and concise argument with appropriate citations to the record as required by Texas Rule of Appellate Procedure 38.1(h).
 

 We conclude that Adams’ fourth issue on appeal is waived. Tex.R.App. P. 38.1(h).
 

 E. Declaratory Judgment
 

 In her sixth issue on appeal, Adams contends that the trial court erred by granting the Bank’s first motion for summary judgment dismissing her declaratory judgment claims and denying her motion for partial summary judgment on those same claims. The Bank responds that the trial court properly dismissed Adams’ request for declaratory judgment because she had already asserted those claims and was not entitled to declaratory relief on the same claims as a matter of law.
 

 1. Applicable Law
 

 A declaratory judgment is appropriate when a real controversy exists between the parties, and the entire controversy may be determined by judicial declaration.
 
 Scurlock Permian Corp. v. Brazos County,
 
 869 S.W.2d 478, 486 (Tex.App.-Houston [1st Dist.] 1993, writ denied). A trial court may refuse to render or enter a declaratory judgment if the judgment will not terminate the uncertainty or controversy giving rise to the proceeding.
 
 Scurlock,
 
 869 S.W.2d at 486;
 
 see Spawglass,
 
 974 S.W.2d at 878.
 

 The Declaratory Judgment Act is “not available to settle disputes already pending before a court.”
 
 BHP Petroleum Co. Inc. v. Millard,
 
 800 S.W.2d 838, 841(Tex.1990)(citing
 
 Heritage Life v. Heritage Group Holding,
 
 751 S.W.2d 229, 235 (Tex.App.-Dallas 1988, writ denied)). Ordinarily declaratory relief will not be granted where the cause of action has fully matured and invokes a present remedy at law.
 
 See Tucker v. Graham,
 
 878 S.W.2d 681, 683 (Tex.App.-Eastland 1994, no writ);
 
 Sylvester v. Watkins,
 
 538 S.W.2d 827, 831 (Tex.Civ.App.-Amarillo 1976, writ ref'd n.r.e.). A declaratory judgment action is improper if declaratory relief is requested for the first time in an amended petition and merely raises the same issues.
 
 See Hartford Cas. Ins. Co. v. Budget Rent-A-Car Systems, Inc.,
 
 796 S.W.2d 763, 772 (Tex.App.-Dallas 1990, writ denied);
 
 Kenneth Leventhal & Co. v. Reeves,
 
 978 S.W.2d 253, 258-59 (Tex.App.-Houston [14th Dist.] 1998, no pet.);
 
 Tucker,
 
 878 S.W.2d at 683.
 

 2. Application of the Law to the Facts
 

 Adams filed her original petition alleging wrongful foreclosure, wrongful credit reporting or defamation, and unjust enrichment. Adams amended her petition to include a claim for intentional infliction of emotional distress and a request for declaratory judgment. But when Adams filed her amended pleading, she had no need for declaratory relief because she had already filed her original petition, which placed the same issues before the trial court.
 
 See BHP Petroleum,
 
 800 S.W.2d at 841;
 
 Hartford,
 
 796 S.W.2d at 772;
 
 Heritage,
 
 751 S.W.2d at 235. As a result, we conclude the trial court properly granted the Bank’s motion for summary judgment dismissing Adams’ request for declaratory judgment and denied Adams’ motion for partial summary judgment seeking a declaratory judgment.
 

 We decide Adams’ sixth issue against her.
 

 
 *860
 

 F. Breach of Contract: Failure to Refund Surplus
 

 In her seventh and eighth issues on appeal, Adams argues that the trial court erred by granting the Bank’s third amended motion for summary judgment when it (1) dismissed her breach of contract claims' because there are genuine issues of material fact regarding whether the Bank breached its contractual duty to refund the surplus funds from the foreclosure sale price of the property, and (2) allowed the Bank to deduct the amount paid on the lien on the adjacent property so that her claim to a surplus was defeated. Specifically, Adams contends that there is a surplus in the amount of the unpaid trustee’s commission and that she should have received the amount of the unpaid trustee’s commission as surplus proceeds of the foreclosure. The Bank responds that it had no contractual obligation to pay Adams the trustee’s commission, there were no surplus proceeds, and Adams suffered no damages as a result of any failure to pay the trustee’s commission.
 

 1.Applicable Law
 

 When the trustee’s commission is part of the parties’ contract, it is part of the indebtedness secured by the deed of trust.
 
 Airline Commerce Bank v. Commercial Credit Corp.,
 
 531 S.W.2d 171, 176 (Tex.App.-Houston [14th Dist.] 1975, writ ref'd n.r.e.).
 

 2.Application of the Law to the Facts
 

 The Bank does not dispute that the substitute trustee’s commission has not been paid. Instead, the parties disagree as to who is legally entitled to the unpaid trustee’s commission. The deeds of trust, under the section heading “Trustee’s Duties,” establish the manner in which the proceeds of the foreclosure sale are paid. The deeds securing the $560,000 loan and the $31,000 loan state as follows:
 

 3.From the proceeds of the sale, [the Trustee shall] pay, in this order:
 

 a. expenses of the foreclosure, including commission to Trustee of 5% of the bid;
 

 b. to [the Bank], the full amount of principal, interest, attorney’s fees, and other charges due and unpaid;
 

 c. any amounts required by law to be paid before payment to [Adams]; and
 

 d. to [Adams], any balance.
 

 Since the trustee’s five percent commission is provided for in the deeds of trust, which list it as a foreclosure expense, it is part of the indebtedness secured by the deeds of trust.
 
 See Airline,
 
 531 S.W.2d at 176. The substitute trustee’s deposition testimony indicates that he expects to be paid the $27,000 trustee’s commission and that it remains as an unpaid expense of the foreclosure. As a result, the unpaid trustee’s commission is not a surplus and the trial court did not err when it granted the Bank’s motion for summary judgment on Adams’ breach of contract claims.
 

 Because the trustee’s commission is not surplus, we need not address the Bank’s arguments that Adams had no right to any surplus following the foreclosure on the $560,000 Note and that she suffered no damages for breach of contract. Also, we need not discuss Adams’ eighth issue on appeal claiming that the trial court erred in allowing the Bank to apply the surplus to the amount paid by the Bank to pay off the superior lien on the adjacent property.
 

 We decide Adams’ seventh and eighth issues against her.
 

 G. Failure to Mitigate Damages
 

 In her ninth issue on appeal, Adams argues that the trial court erred to the extent it found that Adams’ claims were
 
 *861
 
 barred by her failure to mitigate because there are genuine issues of fact as to whether she failed to mitigate her damages. The Bank responds that there were no genuine issues of material fact as to whether Adams failed to mitigate her damages because, after it gave her the opportunity to do so, she made no reasonable attempts to prevent foreclosure, or to redeem, sell, or market the property.
 

 1. Applicable Law
 

 A general point of error stating that “the tidal court erred by granting the motion for summary judgment” is sufficient to preserve all possible grounds on which summary judgment could have been denied.
 
 Plexchem Int’l, Inc. v. Harris County Appraisal Dist.,
 
 922 S.W.2d 930, 930-31 (Tex.1996);
 
 Malooly Bros., Inc. v. Napier,
 
 461 S.W.2d 119, 121 (Tex.1970);
 
 see also Smith v. Tilton,
 
 3 S.W.3d 77, 83 (Tex.App.-Dallas 1999, no pet.);
 
 Rogers v. Continental Airlines, Inc.,
 
 41 S.W.3d 196, 199 (Tex.App.-Houston [14th Dist.] 2001, no pet.). It is also possible to challenge a summary judgment by separate points of error, but a reviewing court will affirm the summary judgment as to a particular claim if an appellant does not present argument challenging all grounds on which the summary judgment could have been granted.
 
 See Malooly,
 
 461 S.W.2d at 121;
 
 Smith,
 
 3 S.W.3d at 83.
 

 2. Application of the Law to the Facts
 

 Adams did not assert a general point of eiror on appeal. Instead, Adams asserts nine separate points of error, which challenge specific points in the Bank’s first and third amended motions for summary judgment. In her ninth issue on appeal, Adams argues only that “the trial court erred to the extent it found [her] claims are barred by her failure to mitigate damages to the extent it was based on her election to sue and because there are genuine questions of fact as to whether she failed to mitigate her damages.” Adams’ argument presumes that the trial court granted summary judgment on the basis of the Bank’s affirmative defense of mitigation of damages. She does not attack the Bank’s alternative grounds for no-evidence summary judgment on her claims for actual damages, damages for mental anguish, punitive damages, damages for intentional infliction of emotional distress, or unjust enrichment, which independently could have provided the basis for the court’s judgment.
 

 When the trial court does not specify the basis for its summary judgment, we affirm the summary judgment if any one of the movant’s theories has merit.
 
 See Star-Telegram,
 
 915 S.W.2d at 473. Adams’ challenge to the summary judgment to the extent that she believes it was based on the Bank’s affirmative defense of mitigation of damages cannot prevail because she has not asserted a general point of error and has not attacked the other grounds upon which the trial court could have granted summary judgment.
 
 See id; Smith,
 
 3 S.W.3d at 83;
 
 Rogers,
 
 41 S.W.3d at 199.
 

 We decide Adams’ ninth issue against her.
 

 III. SPECIAL EXCEPTION TO MOTION FOR SUMMARY JUDGMENT
 

 In her fifth issue, Adams argues that the trial court erred when it overruled her special exception to the Bank’s no-evidence portion of its first motion for summary judgment contending that it was based on the Bank’s affirmative defense of “unclean hands.” The Bank responds that the trial court did not err by overruling Adams’ special exception because she pleaded es-toppel as a basis for her wrongful foreclosure claim, which placed the burden on her to prove that her hands were clean. In
 
 *862
 
 the alternative, the Bank responds that even if the court did err, any error was harmless because summary judgment on the affirmative defense of unclean hands would have been proper because it also filed a traditional motion for summary judgment that provided the trial court with ample evidence that Adams had unclean hands.
 

 A Standard of Review for Special Exceptions
 

 A trial court has broad discretion in ruling on special exceptions.
 
 Leyva v. Soltero,
 
 966 S.W.2d 765, 768 (Tex.App.-El Paso 1998, no pet.). A trial court’s ruling on special exceptions is reversed only if there has been an abuse of discretion.
 
 In re B.A.B.,
 
 124 S.W.3d 417, 420 (Tex.App.-Dallas 2004, no pet.);
 
 Sherman v. Triton Energy Corp.,
 
 124 S.W.3d 272, 282 (Tex.App.-Dallas 2003, pet. filed);
 
 Leyva,
 
 966 S.W.2d at 768. A trial court abuses its discretion if its action is arbitrary, unreasonable, and without reference to any guiding rules or principles.
 
 Dallas County Sheriff's Dep’t v. Gilley,
 
 114 S.W.3d 689, 691 (Tex.App.-Dallas 2003, no pet.)(citing
 
 see Goode v. Shoukfeh,
 
 943 S.W.2d 441, 446 (Tex.1997));
 
 see Downer v. Aquamarine Operators, Inc.,
 
 701 S.W.2d 238, 241-42 (Tex.1985). The mere fact that a trial judge may decide a matter within its discretionary authority in a manner different from an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred.
 
 Downer,
 
 701 S.W.2d at 242.
 

 B. Applicable Law
 

 Texas Rules of Civil Procedure 90 and 91 provide the means for a party to specially except to an adverse party’s pleadings.
 
 See
 
 Tex.R. Civ. P. 90, 91. The purpose of special exceptions is to furnish a party with a medium by which to force clarification of an adverse party’s pleadings when they are not clear or sufficiently specific.
 
 Villarreal v. Martinez,
 
 834 S.W.2d 450, 451 (Tex.App.-Corpus Christi 1992, no writ);
 
 see Friesenhahn v. Ryan,
 
 960 S.W.2d 656, 658 (Tex.1998).
 

 The party asserting estoppel has the burden of proving the essential elements of estoppel and the failure to prove any element is fatal.
 
 Barfield v. Howard M. Smith Co. of Amarillo,
 
 426 S.W.2d 834, 838 (Tex.1968). To invoke the doctrine of estoppel requires “clean hands.”
 
 Ford Motor Co. v. Motor Vehicle Bd.,
 
 21 S.W.3d 744, 758 (Tex.App.-Austin 2000, pet. denied);
 
 Texas Workers’ Compensation Ins. Facility v. Personnel Servs., Inc.,
 
 895 S.W.2d 889, 894 (Tex.App.-Austin 1995, no writ);
 
 see also Traco, Inc. v. Arrow Glass Co., Inc.,
 
 814 S.W.2d 186, 190-91 (Tex.App.-San Antonio 1991, writ denied);
 
 Douglas v. Aztec Petroleum Corp.,
 
 695 S.W.2d 312, 317 (Tex.App.-Tyler 1985, no writ).
 

 Because it is an equitable theory, estoppel is subject to traditional equitable defenses.
 
 In re EGL Eagle Global Logistics, LP,
 
 89 S.W.3d 761, 766 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding). The affirmative defense of “unclean hands” requires that a party seeking equity must come with clean hands.
 
 In re EGL,
 
 89 S.W.3d at 766;
 
 Texas Enters., Inc. v. Arnold Oil Co.,
 
 59 S.W.3d 244, 249 (Tex.App.-San Antonio 2001, no pet.).
 

 A party may not properly move for no-evidence summary judgment based on an affirmative defense that it has the burden to prove at trial.
 
 See Nowak v. DAS Inv. Corp.,
 
 110 S.W.3d 677, 680 (Tex.App.-Houston [14th Dist.] 2003, no pet.). Instead, the party must prove each element of its affirmative defense as a matter of law.
 
 Pustejovsky v. Rapid-American Corp.,
 
 35 S.W.3d 643, 646 (Tex.2000).
 

 
 *863
 

 C. Application of the Law to the Facts
 

 In her original petition, Adams pleaded wrongful foreclosure claiming, in part, that the Bank engaged in inequitable conduct. In her first amended petition, Adams asked for declaratory relief, including a determination that the Bank was estopped to deny that it foreclosed because she defaulted in the payment of the note, that the Bank was estopped from asserting that it foreclosed because she transferred the mortgaged property without its prior consent, and that it was estopped from foreclosing based on the transfer.
 

 In its first motion for summary judgment, the Bank argued that there was no evidence to support any of the elements of proof for Adams’ assertion of estoppel as a basis for her wrongful foreclosure claim. In the body of the Bank’s first motion for summary judgment, under the section heading “The Bank Did Not Waive And/Or Is Not Estopped From Foreclosure,” the Bank stated that the elements of proof for estoppel are as follows:
 

 The party relying upon equitable estop-pel has the burden of proof, and a failure to prove any one of the following elements is fatal: l)false representation or concealment of material facts, 2)made with actual or constructive knowledge of the facts, 3)to a party without knowledge or the means to obtain knowledge of the real facts, 4)made with the intention that such misrepresentation or concealment should be acted upon, and 5)the party to whom it was made must have detrimentally relied upon it to his prejudice.... The party attempting to invoke the equitable doctrine of estoppel must have “clean hands.” [citations omitted].
 

 As part of her response to the Bank’s first motion for summary judgment, Adams filed a special exception claiming that the Bank asserted that she had the burden to prove that she had clean hands as an element of her estoppel claim. She argued that “unclean hands” is an affirmative defense and is not a proper subject for a no-evidence motion for summary judgment.
 
 [6]
 
 The trial court overruled Adams’ special exception in its order partially granting summary judgment.
 

 But the Bank’s no-evidence summary judgment motion is based on Adams’ assertion of estoppel as a basis for her wrongful foreclosure claim and on the absence of evidence to prove any of the elements of that claim. Although the bank also argued that there was no evidence to support the element that Adams had clean hands, it did not identify it as one of the elements on which Adams bore the burden of proof. As a result, we conclude the trial court did not abuse its discretion by denying Adams’ special exception.
 

 D. No Harm
 

 A reviewing court will not reverse a trial court’s error of law unless it concludes that the error complained of probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the court of appeals.
 
 See
 
 TexR.App. P. 44.1(a);
 
 Bader v. Dallas Central Appraisal District,
 
 139 S.W.3d 778, 783 (Tex.App.Dallas 2004, no pet.). Even if the Bank’s motion is interpreted as presenting a no-evidence motion for summary judgment based on an affirmative defense and the trial court should have sustained the special exception, we conclude there is no harm because the trial court did not state the basis on which it granted the Bank’s motion for summary judgment and the Bank argued that there was no evidence on any of the elements of these claims.
 
 See
 
 Tex.R.App. P. 44.1(a).
 

 
 *864
 
 We decide Adams’ fifth issue against her.
 

 IV. CONCLUSION
 

 We conclude the trial court did not err by granting the Bank’s motions for summary judgment and denying Adams’ motion for partial summary judgment. Also, we conclude the trial court did not err by denying Adams’ special exception to the Bank’s first motion for summary judgment and, even assuming the trial court erred, there is no harm. We affirm the trial court’s judgment. Tex.R.App. P. 43.2(a).
 

 [1]
 

 . Counsel for appellant advised this court during oral argument that appellant died approximately three weeks earlier. Pursuant to Texas Rule of Appellate Procedure 7.1(a)(1) if a party to a civil case dies after the trial court renders judgment but before the case has been finalLy disposed of on appeal, the appeal may be perfected, and the appellate court will proceed to adjudicate the appeal as if all parties were alive. Tex.R.App. P. 7.1(a)(1). Further, the decedent party’s name may be used on all papers.
 
 Id.
 

 [2]
 

 . Adams' accountant explained the transfer in a letter to Adams dated June 7, 1999, stating that he "recorded the contribution of [Adams’] equity in [the property] onto Adams First Financial Inc.’s [sic] books effective January 1, 1999. However, this was not actually done until late May or early June of 1999.” Adams’ accountant later sent Adams a second letter dated January 4, 2001, telling her that the previous letter was incorrect and that the property was placed on Adams First Financial’s books effective January 1, 1998. Adams forwarded these letters to the Bank.
 

 [3]
 

 . Adams does not appeal the summary judgment dismissal of claims against Shirley Mul-linix, or of her claims against the Bank for wrongful credit reporting, defamation, unjust enrichment, negligence, usury, common law fraud, statutory fraud, libel per se, intentional infliction of emotional distress, punitive damages, equitable estoppel, and estoppel by deed or contract.
 

 [4]
 

 . Adams did not tell the Bank that she transferred the property to Adams First Financial in 1998 instead of 1999 until after the foreclosure.
 

 [5]
 

 . She contended that estoppel by deed "means that a party is bound by the terms of the party’s own contract or deed unless it is set aside by fraud, accident or mistake.” She has not appealed that part of the summary judgment.
 

 [6]
 

 . The Bank did not respond to Adams’ special exception.