# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00716-CV

**Roy Blizzard and Donna Blizzard, Appellants**

**v.**

**Select Portfolio Servicing f/k/a Fairbanks Capital and Manufacturers and Traders Trust Company, Appellees**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT NO. 12-1132-C277, HONORABLE KEN ANDERSON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Roy Blizzard and Donna Blizzard appeal a judgment rendered in favor of Select Portfolio Servicing f/k/a Fairbanks Capital (SPS) and Manufacturers and Traders Trust Company (MTT). The Blizzards filed suit seeking a determination regarding whether either SPS or MTT was entitled to receive the final balloon payment on the Blizzards' mortgage note and asserting causes of action for fraud, violations of the Texas Fair Debt Collection Practices Act, and filing a fraudulent lien or claim. The trial court granted SPS and MTT's motion for summary judgment and dismissed all of the Blizzards' claims against them. On appeal, the Blizzards assert that summary judgment was improper because of the existence of a genuine issue of material fact regarding whether the final balloon payment should be made to SPS. The Blizzards also challenge the legal ground for the trial court's summary judgment on their fraudulent lien claim. We will affirm.

**BACKGROUND**

In 1995, the Blizzards purchased a house with the proceeds of a loan obtained from Horizon Bank. In 1997, the Blizzards refinanced the loan and executed a balloon promissory note in the amount of $50,700 payable to North American Mortgage Company. The Blizzards also executed a deed of trust securing payment of the debt evidenced by the note. The deed of trust provided that North American Mortgage Company was the beneficiary of that instrument. Shortly thereafter, North American Mortgage Company executed an assignment of the deed of trust and the note to ContiMortgage Corporation. The note was indorsed first with a special indorsement from North American Mortgage Company to ContiMortgage Corporation and then with a blank indorsement by ContiMortgage Corporation. Both indorsements are stamped on the back page of the original note and are signed by authorized signatories for North American Mortgage Company and for ContiMortgage Corporation.

In August 2001, SPS acquired servicing rights to the Blizzards' loan.[1] Since 2001, the Blizzards have made all payments on the note to SPS. The note had a maturity date of October 2, 2012, at which time all amounts due on the note were required to be paid in full. One year before the final balloon payment was due, SPS mailed the Blizzards a letter reminding them of the maturity date and that payment should be made to SPS. SPS sent a second reminder in March 2012, and again directed the Blizzards to make the final payment to SPS. The Blizzards did not make the final balloon payment. On October 16, 2012, the Blizzards filed the underlying suit against JP

_____

[1] At that time, SPS was known as Fairbanks Capital. Fairbanks Capital changed its name to Select Portfolio Servicing in 2004.

Morgan Chase, N.A., ContiMortgage Corporation, SPS, MTT, Boston Portfolio Advisors, and CFN Liquidating Trust.[2]  At the time of the summary-judgment hearing, Boston Portfolio Advisors had filed an answer in which it disclaimed any interest in the note or deed of trust.  The record does not contain any responsive pleadings for JP Morgan Chase, N.A., ContiMortgage Corporation, or CFN Liquidating Trust.

The Blizzards' first amended petition begins with a paragraph entitled "Summary," which states:

> This is a real estate note case brought by Roy and Donna Blizzard.  The Blizzards are seeking to ascertain which party is the owner and holder of the loan and note associated [with] the property that they purchased in 1997.  The Blizzards allege that no legitimate owner and holder of this note has been identified.

The petition further stated that the Blizzards had paid $41,281.47 into the registry of the court and that the suit was brought to determine "the rightful owner and holder of the Note and Deed of Trust, so that the Plaintiffs may satisfy the remainder due on their home loan."  The Blizzards also asserted a cause of action to quiet title to the property and alleged that the named defendants (1) violated chapter 12 of the Texas Civil Practice and Remedies Code by filing fraudulent liens or claims, (2) violated the Texas Fair Debt Collection Practices act by threatening to take actions they were not lawfully entitled to take, and (3) committed actionable fraud by making misrepresentations that caused the Blizzards to pay money to SPS that SPS was not entitled to receive.

---

[2]  According to the petition, these parties are "all of the alleged lenders and mortgage servicers that have held out or have been held out by others as having an interest in the Note and/or Deed of Trust."

3

SPS and MTT filed a traditional and a no-evidence motion for summary judgment, which the trial court granted.  The trial court dismissed all claims against SPS and MTT and severed the claims against SPS and MTT from those against the other defendants, making the judgment final and appealable.  The Blizzards then perfected this appeal.

## DISCUSSION

On appeal, the Blizzards argue that summary judgment was improper because there was a genuine issue of material fact regarding who was entitled to receive payments under the note and because chapter 12 of the Texas Civil Practice and Remedies Code does not apply solely to fraudulent liens, but also to a fraudulent assignment of a deed of trust.[3]

### *Proper Party to Receive Payments on the Note*

The Blizzards assert in their brief that the identity of the party entitled to receive payments under the note is in dispute.  We understand the Blizzards to argue that the trial court erred in concluding that, as a matter of law, SPS was the party entitled to receive the final balloon payment.  The summary-judgment evidence established that SPS was in possession of the original

---

[3] The "Issues Presented" portion of the Blizzards' brief is composed of thirteen paragraphs stating various reasons they believe summary judgment was improper.  However, the argument section of the brief is more limited, addressing only whether there was a genuine issue of material fact regarding whether SPS was entitled to payment under the note and whether chapter 12 of the Texas Civil Practice and Remedies Code applies to documents other than liens.  We will therefore confine our analysis to the two issues the Blizzards briefed and will not address the remaining unbriefed issues. *See* Tex. R. App. P. 38.1(i) (appellant's brief must contain clear and concise argument that includes appropriate citations to authorities and record); *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("Failure to cite legal authority or to provide substantive analysis of the legal issues presented results in waiver of the complaint.").

"wet ink" note, indorsed in blank. SPS and MTT submitted excerpts from the depositions of Roy Blizzard and Donna Blizzard in which each authenticated the note by acknowledging their signatures thereon. The summary-judgment evidence included the affidavit of Michelle Simon, in which she averred that "SPS is in possession of the original Balloon Note, and SPS maintains the original Balloon Note in a collateral file containing other original documents relating to the loan." This affidavit was uncontroverted. Finally, counsel for SPS and MTT brought the original note to the summary-judgment hearing. The Blizzards presented no evidence to challenge the indorsements on the note, including the indorsement in blank by ContiMortgage Corporation.

This evidence conclusively establishes that SPS was entitled to receive the balloon payment under the note. A person is entitled to enforce a negotiable instrument if that person is "the holder of the instrument." Tex. Bus. & Com. Code § 3.301. A "holder" is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." *Id.* § 1.201(b)(21)(A). "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." *Id.* § 3.205(b). Here, it was undisputed that the note was indorsed in blank and was in SPS's possession. Consequently, SPS was entitled to enforce the note and receive payment from the Blizzards. *See, e.g.*, *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *5 (Tex. App.—Austin Aug. 30, 2012, no pet.) (mem. op.) ("An instrument containing a blank endorsement is payable to the bearer and may be negotiated by transfer of possession alone."); *Robeson v. Mortgage Elec. Registration Sys., Inc.*, No. 02-10-00227-CV, 2012 WL 42965, at *4 (Tex. App.—Fort Worth Jan. 5, 2012, pet. denied) (mem. op.) (same). The trial court did not err in concluding that, as a matter of law, SPS was entitled to receive the balloon payment on the note.

5

On appeal, the Blizzards maintain that SPS did not conclusively establish its right to receive payments under the note. First, the Blizzards point to section 3.201(b) of the Texas Business and Commerce Code, which provides that "[i]f an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder." *See* Tex. Bus. & Com. Code § 3.201(b). Thus, according to the Blizzards, SPS was required to conclusively prove the transfer by which it acquired the note, which they contend it failed to do. Section 3.201(b), however, applies to an instrument payable to an identified person, not one indorsed in blank as in the present case. When an instrument is indorsed in blank, it becomes "payable to the bearer and may be negotiated by transfer of possession alone." *Id.* § 3.205(b). Because the note was indorsed in blank, SPS's possession of the note was sufficient to prove it was the note's holder entitled to payment. The Blizzards' reliance on *Jernigan v. Bank One, Texas, N.A.*, 803 S.W.2d 774 (Tex. App.—Houston [14th Dist.] 1991, no writ), is similarly misplaced. *Jernigan* is inapplicable to this case because the note at issue in that case was not indorsed to bearer or in blank. *Id.* at 775-76.

The summary judgment evidence established that SPS was in possession of an instrument indorsed in blank and, as its holder, was entitled to payment. SPS was not required to prove the transfer by which it acquired the note. *See* Tex. Bus. & Com. Code § 3.205(b).[4] The trial

---

[4] The Blizzards' brief also includes a discussion of the distinction between a "statutory mortgagee" and a "common-law mortgagee" in an effort to explain why neither SPS nor MTT is a "mortgagee" with the power to foreclose on the property securing the note. As set forth above, however, a party in possession of a note indorsed in blank is its holder entitled to payment regardless of whether it is also a mortgagee. The fact that SPS was in possession of a note indorsed in blank was dispositive of the issue of whether SPS was entitled to receive the final balloon payment on the promissory note.

court did not err in granting SPS and MTT's motion for summary judgment that SPS was entitled to payment of the balance of the note.

***Texas Civil Practice and Remedies Code Chapter 12***

The Blizzards alleged in their amended petition that the defendants violated chapter 12 of the Texas Civil Practice and Remedies Code by presenting and using documents or other records with knowledge that they constituted a fraudulent claim to an interest in real property. Section 12.002 provides:

> (a)  A person may not make, present, or use a document or other record with:
>
> (1)  knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
>
> (2)  intent that the document or other court record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property, and
>
> (3)  intent to cause another person to suffer:
>
>> (A)  physical injury;
>> (B)  financial injury; or
>> (C)  mental anguish or emotional distress.

Tex. Civ. Prac. & Rem. Code § 12.002.  The Blizzards alleged that various documents, including assignments of their deed of trust to MTT, were fraudulent and that SPS and MTT violated section 12.002 by making, presenting, or using those documents.  SPS and MTT moved for summary judgment on the ground that the documents, consisting of allegedly defective assignments, appointments of

7

substitute trustees, notices of trustee's sales, and substitute trustee's deed, were not "liens" or claims to property falling within the purview of section 12.002. SPS and MTT argued that the statute created a cause of action against a person who filed a fraudulent judgment lien or fraudulent documents purporting to *create* a lien against or interest in property, not documents assigning or notifying a party of action being taken on an *existing* lien or interest in property. SPS and MTT also moved for a no-evidence summary judgment on the ground that the Blizzards presented no evidence that either SPS or MTT (1) used any document with knowledge that it was fraudulent or with the intent to deceive and (2) intended to cause the Blizzards either physical injury, financial injury, or mental anguish. The trial court granted the motion for summary judgment without specifying the grounds.

On appeal, the Blizzards urge this Court "to hold that an 'assignment' of interest in a Deed of Trust can constitute a claim of an interest in real property, and that Chapter 12 does therefore apply to such assignments when they are fraudulent." The Blizzards do not challenge on appeal the no-evidence grounds for summary judgment regarding their chapter 12 claims. The trial court's order granting summary judgment does not specify the ground or grounds on which it was based. A party appealing such an order must negate all possible grounds on which the order could have been based by either asserting a separate issue challenging each possible ground, or asserting a general issue that the trial court erred in granting summary judgment and within that issue providing argument negating all possible grounds on which summary judgment could have been granted. *See Wilhite v. Glazer's Wholesale Drug Co.*, 306 S.W.3d 952, 954 (Tex. App.—Dallas 2010, no pet.). If the appellant does not challenge each possible ground for summary judgment, we must uphold the summary judgment on the unchallenged ground. *See Adams v. First Nat'l Bank of*

8

*Bells/Savoy*, 154 S.W.3d 859, 875 (Tex. App.—Dallas 2005, no pet.) ("[A] reviewing court will affirm the summary judgment as to a particular claim if an appellant does not present argument challenging all grounds on which the summary judgment could have been granted."). The Blizzards have neither challenged the no-evidence grounds for summary judgment as to the fraudulent lien claim nor explained how the summary-judgment evidence raised fact issues as to particular essential elements of that claim. Consequently, we will affirm the summary judgment as to that claim. *See La Paz Funeral Home, Inc. v. Forever Enters., Inc.*, No. 03-05-00196-CV; 2007 WL 1451665, at *2 (Tex. App.—Austin May 16, 2007, no pet.) (mem. op.) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003)).

## CONCLUSION

For the reasons stated above, we affirm the trial court's order granting summary judgment and dismissing the Blizzards' claims against SPS and MTT.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   August 27, 2015

9