### CITY OF SEYMOUR v. MUNICIPAL ACCEPTANCE CORPORATION.

No. 11998.

Court of Civil Appeals of Texas. Dallas.

July 11th, 1936.

Rehearing Denied Sept. 26, 1936.

Bert King and Arch Dawson, both of Wichita Falls, for appellant.

Touchstone, Wight, Gormley & Price, of Dallas, for appellee.

LOONEY, Justice.

Municipal Acceptance Corporation, of Chicago, Ill., sued the city of Seymour, Baylor county, Tex., a municipal corporation, upon a series of warrants issued by the city to Fairbanks Morse & Co., Inc., also of Chicago, Ill. (subsequently the warrants were transferred to plaintiff), evidencing the purchase price of an electric light and power plant erected by payee for the city under the terms of and as authorized by articles 1111 to 1118, R.C.S., inclusive, as amended, and also to foreclose an alleged contract and statutory lien upon the plant and its revenues. On trial before the court, judgment was rendered establishing plaintiff's debt in its entirety and decreeing foreclosure as prayed, from which the city appealed.

The facts are undisputed. On June 15, 1928, an executory contract was consummated between the city and Fairbanks Morse & Co., Inc., whereby for the consideration of $110,000, to evidence which the city was to issue its revenue warrants, seventy-two in number, on completion of

the plant, bearing interest at the rate of 6 per cent. per annum, secured by chattel mortgage lien on the plant and its net revenues. The contract contained the following provision: "It is agreed that the obligation to pay the deferred installments of said purchase price and said pledge orders issued in evidence thereof is not a general obligation of said municipality payable from taxes or its general funds, but only a special obligation payable from the net revenues of the light plant of the municipality."

On December 15, 1929, the plant having been completed and accepted, the city caused to be executed the seventy-two warrants, denominated "notes," as mentioned in the executory contract, and in each the amount payable and date of payment were stated. Also on same date the city caused to be executed similar warrants, eighteen in number, aggregating $15,749.98, for extras furnished by Fairbanks Morse & Co., Inc. These notes or warrants were on printed forms, one typical of all, reads: "$1526.00 Seymour, Texas, Dec. 15th, 1929, No. 17102. Two months after date, for value received, we, and each of us severally and jointly promise to pay to Fairbanks Morse & Co. Inc. or order, at Dallas, Texas, One Thousand Five Hundred Twenty Six and no/100 Dollars, with interest until paid, at the rate of six per cent per annum from date and six per cent per annum after maturity interest payable semiannually as it accrues. This note is one of a series of Seventy Two notes of even date, and in case of the non-payment of the principal or interest of this note when due, or any of the notes of this series, then all of the said notes shall immediately become due and payable at the option of the legal holder thereof. Should this note be placed in the hands of an attorney for collection we agree to pay an additional sum of ten per cent as attorney's fees. Principal and interest payable in gold coin of the United States. The holder hereof shall never have the right to demand payment of this obligation out of any funds raised or to be raised by taxation, payable only from the revenues of the Light Plant as per contract dated June 15, 1928 * * *."

On December 15, 1930, the city and Fairbanks Morse & Company, Inc., entered into an adjustment and extension agreement, whereby the city renewed these obligations and agreed to pay same at the rate of $500 per month on the first of each month thereafter for the succeeding twelve months; $900 on the first of each month thereafter for the next succeeding twelve months; $1,000 on the first of each month thereafter for the next succeeding twelve months; and $1,250 per month each month thereafter until the principal and interest of said original indebtedness were paid; and further it was agreed that: "The original contract for the purchase of said plant having been made under the authority of article 1111 of the Civil Statutes of the State of Texas (as amended by Acts 1927, c. 194, § 1) and pursuant thereto, it is expressly agreed and understood that all rights, liens and equities of any kind or character securing the payment of said original contract, and all rights, liens and equities authorized to be given to secure the payment for such plant under the provisions of articles 1111 to 1118 inclusive of the said Civil Statutes are hereby renewed, extended and granted * * *."

Prior to the extension agreement, the city had paid on the obligations the sum of $2,933.85, and thereafter paid $14,100, of which $1,000 was paid after the institution of suit, leaving overdue June 1, 1934, after deducting these payments, an amount in excess of $20,000.

As the statute, by authority of which these contracts came into existence, constitutes a part thereof and must be read into same, we will here notice certain of these pertinent statutory provisions. With reference to obligations, such as are involved here, article 1111, on the date of the contracts in suit, provided that: "No such obligation shall ever be a debt of such city or town, but solely a charge upon the properties so encumbered and shall never be reckoned in determining the power of such city or town to issue any bonds for any purpose authorized by law." Article 1113 (as amended by Acts 1927, c. 194, § 3) makes it the duty of the city to charge and collect for services rendered by the plant a sufficient rate to pay for all operating, maintenance, depreciation, replacement, betterment, and interest charges, and for interest and sinking fund sufficient to pay the obligations issued to purchase, construct, or improve any such systems or any outstanding indebtedness against same, but the expenses of operation and maintenance, including salaries, labor, materials, interest, repairs, and extensions necessary to render efficient serv-

ice and every proper item of expense shall always be a first lien and charge against incomes. Article 1114 provides that every contract or other evidence of indebtedness issued under the provisions of this law shall contain the following clause: "The holder hereof shall never have the right to demand payment of this obligation out of any funds raised or to be raised by taxation." Article 1114a, Vernon's Ann. Civ.St., enacted in 1933, in saying that, "Projects financed in accordance with this law are hereby declared to be self-liquidating in character and supported by charges other than by taxation," is but declaratory of the obvious intent of the Legislature, clearly inferable from prior statutes relating to this subject.

On June 26, 1934, plaintiff made demand in writing upon the city for payment of the amount overdue, and the amount not being paid, on July 2, 1934, notices were registered by it to each member of the governing body of the city, stating that payment of the amount in arrears had been demanded and that default had been made, and thereafter plaintiff began foreclosure proceedings. Plaintiff justifies this action under article 1118, which provides that: "No collection fees shall accrue, and no foreclosure proceedings shall be begun in any court or through any trustee, and no option to mature any part of such obligation because of default in payment of any installment of principal or interest shall be exercised until ninety days written notice shall be given to each member of the city council of such city or town and to each member of such board of trustees, if any, that payment has been demanded and default made, which notice shall date from the sending of a prepaid registered letter to each person to be notified, addressed to them at the post office in such city or town."

Plaintiff did not allege, or attempt to show, that the city failed to pay on these obligations all net revenues derived from the operation of the plant; on the contrary, it was indisputably established that the city did pay all net revenues accruing prior to the institution of the suit, and even after the institution of suit, paid $1,000. Neither malfeasance, misfeasance, nor nonfeasance on the part of city authorities in the management of the plant was alleged, plaintiff's insistence being that the simple failure of the city to pay certain of these obligations on the dates specified gave plaintiff the right to exercise the option to mature all obligations and institute foreclosure proceedings.

The city presents several minor or subsidiary questions that we do not deem necessary to discuss, because we are of opinion that the disposition we make of the major proposition urged, decides the controversy. The city contends that, as it was only obligated to pay plaintiff the net revenues derived from operating the plant, there could be no default unless it failed in this respect, and this notwithstanding the insufficiency of the net revenues to satisfy the amounts due on the dates stipulated; and having discharged this obligation that plaintiff was neither authorized to accelerate maturities nor institute foreclosure proceedings, hence it failed either to allege or prove a cause of action justifying the rendition of the judgment appealed from.

We sustain the city's contention. The provisions of the statute, as well as the stipulations of the writings between the parties, show conclusively that the obligations sued upon do not evidence debts, within the ordinary acceptation of that term; in fact, the Supreme Court so held in City of Dayton v. Allred, Attorney General, 123 Tex. 60, 68 S.W.(2d) 172. The project being self-liquidating, that is, plaintiff being required to look alone to its net revenues for payment, it had no legal right to demand of the city payment out of any other fund, and as a necessary corollary the city was not legally obligated to pay out of any other fund. In 13 C.J. p. 631, § 701, the following doctrine, well supported by authorities, is announced: "A contract or promise to pay may be restricted to a particular fund, so as to make the raising or the sufficiency of the fund a condition precedent to the liability, and in such case the promise cannot be enforced until the fund is realized, unless the failure to realize or collect the fund from which payment is made is due to the neglect, or to the unreasonable refusal to act, of the promisor, or is otherwise attributable to him. So, where the contract of the parties is that the creditor shall look to a particular fund, he cannot, on the failure of such fund not attributable to the fault of the debtor, hold the debtor personally responsible, unless the contract contains stipulations amounting to a guaranty that the funds specified shall be sufficient for payment * * *."

Plaintiff argues that: "The statute and the contract contemplated a definite series of instruments, and contemplated foreclosure in the event of 'default.'" Pursuing this idea, plaintiff insists that: "The word 'default', as used in the statute and as used in the contract, means 'default in payment of any installment.' In other words, if the revenues are 'insufficient to pay such installment', a default exists."

■ We cannot accept this view. The city having paid plaintiff all net revenues derived from the operation of the light plant, and being without fault in its management, its failure to pay the amounts as stipulated, evidently was due to economic conditions, over which it had no control and for which it should not be penalized by being subjected to foreclosure proceedings. It is true the contract contemplated that the obligations issued would bind the city to pay installments on named dates, but it is also true that the contract contemplated that these payments would be made exclusively from net revenues, as each warrant contains the following provision: "The holder hereof shall never have the right to demand payment of this obligation out of any funds raised or to be raised by taxation, payable only from the revenues of the light plant as per contract dated June 15, 1928."

It is obvious we think that the default, contemplated by contract and statute, that would authorize the holder of obligations to accelerate maturities and begin foreclosure proceedings, is the failure to pay net revenues, hence the default contemplated is not shown unless there is failure in this respect. In view of the very genius of the contract, we think necessarily, there is interpolated the proviso that payment of the amount specified on the date named, is conditioned upon there being on hand net revenues derived from the operation of the plant with which to make the payment.

Therefore, we are of opinion that plaintiff failed to allege a cause of action, consequently failed to establish same, hence the judgment of the court below will be set aside and plaintiff's suit dismissed.

Our order would end at this point but for the plea of tender by defendant, alleging that: "This defendant further says that since the beginning of this suit it has continued to make monthly reports to the plaintiff of the revenues derived from said plant and now has on hand the net revenues accruing since the filing of this suit and stands ready and willing to pay over the same to the plaintiff, and will continue hereafter promptly to account and pay over to the plaintiff the net revenues derived from said plant and here and now makes tender and offers to do full equity in the premises as the court may require." The evident propriety and justice of the situation presented by this plea demand that this phase of the case be remanded to the trial court, with instructions to ascertain the amount of net revenues accumulated since the last payment, to the date of said inquiry; and to that end, defendant is directed to cause to be filed in the court below statement showing the amount of net revenues derived from the operation of the plant since the last payment to plaintiff, and to pay same into the registry of court for the benefit of plaintiff; the receipt of the clerk of court, to that extent, will operate as a discharge of the city from its said obligation to plaintiff. However, nothing said in or implied from our orders shall prejudice any future action plaintiff may be warranted in taking for the protection of its interest.

The judgment of the court below is set aside, plaintiff's suit is dismissed, and the cause is remanded, with instructions as to defendant's plea of tender, and plaintiff is adjudged to pay all costs incurred in this and in the court below.