Bertran T. BADER III et ux. Judith K. Bader, Individually and as a class of persons similarly situated, Appellants,

v.

DALLAS CENTRAL APPRAISAL DISTRICT and Appraisal Review Board of Dallas County, Texas, Appellees.

No. 05–03–01057–CV.

Court of Appeals of Texas, Dallas.

July 22, 2004.

Bertran T. Bader, III, Bertran T. Bader, III, P.C., Dallas, for Appellant.

Evelyn Conner Hicks, Donald W. Hicks, Law Office of Donald W. Hicks, Sr., P.C., Jon A. Haslett, Marc H. Richman, Law Office of Marc H. Richman, Dallas, for Appellee.

Before Justices FITZGERALD, RICHTER, and LANG.

## OPINION

Opinion by Justice LANG.

In this tax appraisal dispute, appellants Bertran T. Bader III and Judith K. Bader (collectively "Bader") seek reversal of the trial court's partial summary judgment in favor of appellees, Appraisal Review Board of Dallas County ("ARB") and Dallas Central Appraisal District ("DCAD"), upholding the denial of Bader's tax appraisal protest by appellees. That partial summary judgment was rendered final and Bader brings three issues on appeal.

In the first two issues, Bader contends the trial court erred in granting summary

judgment in favor of appellees because of an erroneous interpretation of Texas Tax Code section 23.23 which, he says, caused the 2002 valuation of his "residence homestead" to exceed the ten percent annual "cap" on valuation increases and, thereby, caused him to be overtaxed. Specifically, Bader argues that appellees have incorrectly applied the ten percent cap on appraised valuation of his residence homestead to the aggregate value of the land and improvements. Rather, according to Bader, appellees should have applied the ten percent cap on increased valuation separately to the value of each of the discrete components of his "residence homestead," i.e., the land on the one hand and the improvements on the other.

In a third issue, Bader complains that the trial court erred in overruling his objections to appellees' summary judgment evidence. For the reasons that follow, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL CONTEXT

Bader owns a residence homestead located in Dallas, Texas. In 2001, DCAD valued the residence homestead at $217,000. The value of the land comprised $75,000 of that total and the improvements comprised the remaining $142,000 of the value. However, that 2001 valuation of the residence homestead was capped at $181,500 due to the statutory maximum increase, or "cap," of ten percent. *See* Tex. Tax Code Ann. § 23.23 (Vernon Supp. 2004). In its appraisal notice for 2002, DCAD valued the residence homestead at $235,000. The value of the land remained the same, $75,000, while the value of the improvements was increased to $160,000. Based upon its interpretation of section 23.23, DCAD capped the taxable value of the residence homestead at $199,650, rather than the appraised value of $235,000.

This capped value represented the 2001 value of $181,500 plus ten percent.

Bader initiated an administrative tax appraisal protest arguing that DCAD's proposed increase of the capped taxable value of his residence homestead to $199,650, violated section 23.23 of the Texas Tax Code. *See* Tex. Tax Code Ann. § 23.23. Bader complained that DCAD improperly applied the statute's ten percent cap on annual valuation increases to a residence homestead because the separate value of the improvements portion of the homestead was increased by greater than ten percent from 2001 to 2002. ARB denied his protest and Bader sought judicial review of the ARB decision in the trial court. Appellees moved for summary judgment on the following grounds: (1) res judicata and (2) that DCAD properly interpreted and administered the limitation on residence homestead valuation increases set out in section 23.23. The trial court granted partial summary judgment in favor of appellees on the issue concerning appellees' interpretation and administration of section 23.23. The partial summary judgment was rendered final and this appeal ensued.

## APPELLANT'S INTERPRETATION OF TEXAS TAX CODE SECTION 23.23

In issues one and two, Bader contends that DCAD's faulty interpretation of section 23.23 violates the mandated ten percent cap. It is Bader's position that when the appraised valuation of a residence homestead is increased, section 23.23 of the Texas Tax Code requires DCAD to apply the annual ten percent cap separately to the land and to the improvements. According to Bader's view, because DCAD did not change the value of the land, section 23.23 required appellees to cap the taxable valuation of the improvements for

2002 by increasing that sum no more than ten percent over the 2001 capped taxable valuation.[1] He claims that if DCAD does not apply the cap separately, the appraisal district can effectively manipulate the valuations of the separate components of the residence homestead. According to Bader, this could result in a possible valuation increase, of either the land or improvements, that exceeds ten percent.

Bader's position focuses on the interpretation of the term "property" as it appears in section 23.23. Bader argues that the term "property" as used in section 23.23 encompasses two component parts: (1) land and (2) improvements. Hence, Bader argues the ten percent cap must be applied separately to each component. To support that position, Bader directs us to terms specifically defined in section 1.04 of the tax code and suggests that we must interpret section 23.23 in conjunction with those definitions. Next, Bader claims to find support for this separate valuation of the land and improvements, for purposes of applying the section 23.23 cap, in section 25.19(f) of the tax code. Section 25.19(f) requires the appraisal district to list separately the market value of the land and the total market value of the structures and improvements. *See* TEX. TAX CODE ANN. § 25.19(f) (Vernon Supp.2004). Bader argues in his brief, "The only logical purpose is to facilitate application of the ten percent limitation of section 23.23 by requiring the ten percent limit to be applied separately to the land and improvements."

## STANDARD OF REVIEW AND APPLICABLE LAW

Statutory interpretation presents a question of law subject to de novo review. *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 437 (Tex.1997). The Texas Legislature has provided the Code Construction Act to guide our interpretation of the Texas Tax Code. *See* TEX. GOV'T CODE ANN. § 311.001 *et seq.* (Vernon 1998) (the "Act"); *Fleming Foods, Inc. v. Rylander*, 6 S.W.3d 278, 283–84 (Tex.1999). According to the Act, "We must construe statutes as written and, if possible, ascertain legislative intent from the statute's language." *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex.2001). Even when a statute is not ambiguous on its face, we may consider other factors to determine the legislature's intent, including the object sought to be obtained; circumstances of the statute's enactment; legislative history; common law or former statutory provisions, including laws on the same or similar subjects; consequences of a particular construction; administrative construction of the statute; and title, preamble, and emergency provision. *Id.* (citing TEX. GOV'T CODE ANN. § 311.023).

"Additionally, we must always consider the statute as a whole rather than its isolated provisions." *Id.* "We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone." *Id.*

1. Bader's interpretation of section 23.23 results in the following calculation which he described to us:

| | | |
|---|---|---|
| $181,500 | 2001 capped valuation of Bader's residence homestead | |
| − 75,000 | 2001, 2002 land valuation | |
| 106,500 | Remaining value which Bader attributes to "improvements" | |
| × 10% | Maximum capped increase on improvements | |
| 10,650 | | |
| + 181,500 | Total 2001 "capped" valuation | |

## APPLICATION OF LAW TO FACTS

■ The section of the tax code we are asked to interpret states that, for purposes of tax assessment, the appraised value of a residence homestead may not increase more than ten percent annually. *See* Tex. Tax Code Ann. § 23.23. To determine whether this "cap" applies separately to the land and to the improvements or to the "residence homestead" in the aggregate, we must analyze the language of the statute, which reads in pertinent part:

**Limitation on Appraised Value of Residence Homestead**

(a) The appraised value of a residence homestead for a tax year may not exceed the lesser of:

(1) the market value of the property; or

(2) the sum of:

(A) 10 percent of the appraised value of *the property* for the last year in which *the property* was appraised for taxation times the number of years since *the property* was last appraised; . . . .

*Id.* (emphasis added).

Bader claims that the term "property" in section 23.23 refers to the land and improvements as separate components. As stated above, Bader claims we must look to the definitions in section 1.04 to find the meaning he urges that we adopt.

The definitions in section 1.04 are instructive, but not controlling of the outcome of this case. Section 1.04 defines "property" as "any matter or thing capable of private ownership." *See id.* § 1.04. The meaning of "property" includes both real and personal property. *See id.*

§ 1.04(2)-(5). "Real property" includes, among other types of property, "land" and "an improvement." *Id.* § 1.04(2)(A)-(B). "Improvements" include an exhaustive description of various types of structures and fixtures. *Id.* § 1.04(3). If we were to apply these definitions to the term "property" as it appears in section 23.23, we could conclude that the meaning of "property" clearly encompasses a unit of land and improvements thereon which comprise a "residence homestead." Nevertheless, in the section 1.04 definitions, we can find no direction that requires separate application of the ten percent cap to land and to improvements.

Now, we address Bader's assertion that section 23.23 must be interpreted in conjunction with section 25.19(f). Section 25.19(f) requires the appraisal district to list separately the market value of the land and improvements thereon in the notices of appraisal value it sends to property owners.[2] Bader reasons that because the legislature requires separate listing of land and improvements in the notice of appraised value, then, necessarily, the legislature intended the cap required by section 23.23 to be applied separately to the land and improvements components of a residence homestead. We disagree.

By its plain language, section 25.19(f) applies to all real property, not just residence homesteads. One who owns any character of real property, whether commercial or residence homestead, must be able to identify the value set for the component parts of one's real property in order to determine whether to contest an appraised value set by the DCAD. That

$192,150    Bader's version of 2002 capped valuation for residence homestead

**2.** (f) In the notice of appraised value for real property, the chief appraiser shall list separately:

(1) the market value of the land; and

(2) the appraised value of the structures and other improvements on the property. Tex. Tax Code Ann. § 25.19(f).

purpose, to give "notice" of the appraised value, does not translate into a requirement that an appraisal district apply the ten percent cap separately to the land and then to the improvements. We find no language through which the legislature linked section 25.19(f) to the "cap" in section 23.23.

We conclude that an analysis of section 23.23 itself is more relevant and helpful than attempting to fit together parts of section 1.04 and section 25.19(f) with section 23.23. The term "residence homestead" is plainly the subject of the statutory section since it appears in the heading and in the first sentence of the section. Thereafter, section 23.23 refers variously to the "market value" or "the appraised value" of "the property." The term, "the property," appears seven times in section 23.23(a). The use of the definite article "the" before "property" indicates that each repetition of "property" refers back to the first mention of property in the statute, i.e., the "residence homestead." *See Segal v. Emmes Capital, L.L.C.,* —— S.W.3d ——, ——, No. 01–01–00460–CV, 2004 WL 440900, at *13 (Tex.App.-Houston [1st Dist.] Mar. 11, 2004, no pet. hist.) (op. on reh'g). "Residence homestead" is the only "property" to which section 23.23(a) refers. The language of section 23.23, even if analyzed in light of section 1.04 and section 25.19(f), does not reflect any legislative intention to require separate valuations of the land and improvements components of a residence homestead for purposes of applying the section 23.23 ten percent cap.

A comparison of the use of the term "residence homestead" by the legislature in both section 23.23 and in section 11.13 respecting tax exemptions, gives us addi-tional direction in our analysis of section 23.23. Section 11.13 of the tax code provides for exemptions from ad valorem taxation of certain enumerated dollar amounts of the "appraised" or "annual" valuation of real estate which qualifies as a "residence homestead." *See* TEX. TAX CODE ANN. § 11.13 (Vernon Supp.2004).[3] That section of the statute defines "residence homestead" as:

a structure (including a mobile home) or separately secured and occupied portion of a structure (*together with the land,* not to exceed 20 acres, *and improvements used in the residential occupancy of the structure,* if the structure and the land and improvements have identical ownership) that: (A) is owned by one or more individuals . . .; (B) is designed or adapted for human residence; (C) is used as a residence; and (D) is occupied as his principal residence by an owner . . . .

*Id.* § 11.13(j)(1) (emphasis added).

Section 23.23 does not define the term "residence homestead." However, the plain language of section 23.23 dictates that the valuation cap is applicable only when property qualifies as a "residence homestead." *See id.* § 23.23(c). Our research reveals that section 11.13 provides the only definition of "residence homestead" in the tax code.

Also, the subject of section 11.13, the designation of exemptions from taxation on residence homesteads, and the subject of section 23.23, the limitation on appraised values of residence homesteads, are closely related. Each section serves to limit the ultimate taxation of residence homesteads under the tax code. The language of section 23.23 gives no indication that the leg-

3. For instance, among the exemptions to taxation of a "residence homestead" are section 11.13(a), which provides for an exemption from taxation of $3000 of the "assessed valua-tion," and section 11.13(c), which provides a $10,000 exemption from the "appraised valuation" for taxpayers who are disabled or 65 years of age or older.

islature intended a meaning of "residence homestead" that differed from the definition set out by it in another part of the tax code, section 11.13(j)(1). Since the sections are *in pari materia,* we will read and construe them together. *Calvert v. Fort Worth Nat'l Bank,* 163 Tex. 405, 356 S.W.2d 918, 921 (1962); *Bowling v. City of Pearland,* 478 S.W.2d 143, 145 (Tex.Civ. App.-Houston [14th Dist.] 1972, writ dism'd w.o.j.); *see also* TEX. GOV'T CODE ANN. § 312.005. Because of the relationship of the two statutory sections described above, the term "residence homestead" in section 23.23 should be construed in a manner that harmonizes with the meaning given that term in section 11.13(j)(1). *See Argonaut Ins. Co. v. Baker,* 87 S.W.3d 526, 531 (Tex.2002); *Helena Chem.,* 47 S.W.3d at 493.

Finally, we presume that when the legislature enacted section 23.23 in 1997, it was aware of section 11.13 and the definition of "residence homestead" therein established for the purposes of limiting certain taxpayers' ad valorem tax burdens.[4] *See Argonaut Ins.,* 87 S.W.3d at 530–31; *Acker v. Tex. Water Comm'n,* 790 S.W.2d 299, 301 (Tex.1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it."). Based upon these principles and the relationship of section 23.23 to section 11.13, we conclude the legislature intended that the term "residence homestead" in section 23.23 have the meaning assigned to it in section 11.13.

The definition of "residence homestead" provided in section 11.13 includes "a structure ... together with the land and improvements used in the residential occupancy of the structure...." This conjunction of land and improvements re-

flects that a "residence homestead" is a unit, and should not be treated by its separate components of land and improvements. Accordingly, section 23.23 should not be interpreted to apply the ten percent cap to the land and improvements separately, but to the aggregate valuation of the unitary "residence homestead."

We conclude that the legislature intended the ten percent cap to apply to the residence homestead as a single unit, i.e., the land together with improvements. Accordingly, the trial court did not err in granting summary judgment in favor of appellees. Issues one and two are resolved adversely to Bader.

## SUMMARY JUDGMENT EVIDENCE

In a third issue, Bader contends that the trial court erred in overruling his objections to certain portions of appellees' summary judgment evidence. Evidentiary rulings are "committed to the trial court's sound discretion." *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex.1998) (quoting *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995)). A trial court abuses its discretion when it rules "without regard for any guiding rules or principles." *Id.* A reviewing court will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *See id;* TEX. R. APP. P. 44.1. Assuming, without deciding, that the trial court erred, we conclude Bader failed to show harm. In his brief, Bader asserts that an affidavit proffered by appellees contained legal conclusions. However, Bader does not explain how such statements caused the trial court to render an improper judgment. Rather, he concedes

---

4. In fact, the legislature approved acts concerning sections 23.23 and 11.13 on the same day, June 19, 1997.

that "It is quite unlikely that this improper evidence [led] the Trial Court into error." We agree and resolve Bader's third issue adversely to him.

## CONCLUSION

Having resolved Bader's three issues adversely to him, we affirm the trial court's judgment.