Affirmed and Memorandum Opinion filed July 23, 2009








Affirmed and Memorandum Opinion filed July 23, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00959-CV

____________

 

GERALD M. WALSTON, BEN C. MORRIS,
AND WILLIAM L. CHILDRESS, Appellants

 

V.

 

ANGLO-DUTCH PETROLEUM (TENGE)
L.L.C., ANGLO-DUTCH PETROLEUM INTERNATIONAL, INC., AND SCOTT V. VAN DYKE, Appellees

 



 

On Appeal from the 157th
District Court 

Harris County, Texas

Trial Court Cause No. 2005-07377

 



 

M E M O R A N D U M   O P I N I O N

This is a breach of contract case.  The trial court granted
summary judgment against appellants Gerald Walston, Ben Morris, and William
Childress and ordered that they take nothing on all of their claims against
appellees Anglo‑Dutch Petroleum (Tenge) L.L.C. (AADT@), Anglo‑Dutch
Petroleum International (AADPI@), and Scott V.
Van Dyke.  In five issues, appellants claim the trial court erred in granting
summary judgment and in admitting portions of Van Dyke=s affidavit
testimony.  We affirm.








I. 
Background

Appellants prepared a feasibility study of a Kazakhstani
oil and gas field (Athe Tenge field@) based upon a
data package purchased by their employer, ADPI.  The study revealed promise in
the Tenge field, and ADT formed Tenge Development L.L.C. (ATDL@), a group of
investors.  TDL acquired an interest in Anglo‑Dutch (Kazakhtenge) L.L.C.
(AADK@), another group
of investors.  To develop the Tenge field, ADK formed a joint enterprise (Athe TJE@) with a
Kazakhstani oil association.  Thus, ADPI acquired an interest in the TJE
through ADT because ADT holds an interest in TDL, TDL holds an interest in ADK,
and ADK is a member of the TJE.

Appellants were paid a salary by ADPI and also entered into
Net Profits Agreements (Athe Agreements@) with ADT as
additional compensation.  The Agreements required appellants to meet cash calls
from ADT for general and administrative costs of the companies in the
distribution structure described above in return for a percentage of the net
profits ADT received Asubstantially@ from TJE Aoperations.@  The parties do
not dispute that appellants met their obligations under the Agreements, but
argue over the scope of appellants= net profits
interest.[1]

Sometime after entering into the Agreements, appellees
attempted to acquire a majority interest in the TJE.  Seeking new investment,
appellees gave Halliburton and other companies (AHalliburton@) access to
confidential information on many aspects of the








Tenge
field and the TJE.  Halliburton leaked the confidential information to third‑party
companies who then bought the TJE majority interest sought by appellees.  ADT
and ADPI sued Halliburton and the third party companies for lost profits
stemming from their breach of confidentiality.  ADT and ADPI prevailed at trial
and ultimately settled with Halliburton.  Van Dyke, as President of ADPI (the
administrative member of ADT), allocated all of the settlement proceeds to
ADPI.

Seeking a portion of the Halliburton settlement proceeds,
appellants filed a motion to compel arbitration pursuant to the terms of their
various contracts.  Appellees then brought a declaratory judgment action,
asking the trial court to declare that (1) ADPI and Van Dyke had not entered
into the contracts with appellants and were therefore not liable to them, and
(2) that unsatisfied conditions precedent precluded ADT=s duty to perform
under the contracts.  Appellants counterclaimed, asking the trial court to
declare that (1) ADPI and Van Dyke were proper parties to the suit, and (2) that
the contracts entitled appellants to an accounting and profits from the
settlement proceeds.  Appellants also counterclaimed for breach of contract,
breach of fiduciary duty, and various extra‑contractual claims. 
Appellees moved for summary judgment on traditional and no evidence grounds. 
Appellants responded and also challenged the admissibility of portions of Van
Dyke=s affidavit.  The
trial court overruled appellants= evidentiary
objection, granted appellees= summary judgment motion, and entered
final judgment dismissing appellants= counterclaims and
declaring that appellees have no liability to appellants.  This appeal
followed.

II. 
Summary Judgment








In their second issue and subissue one of their fifth
issue, appellants challenge the trial court=s grant of
appellees= summary judgment as to their declaratory judgment and
breach of contract claims.  In reviewing a traditional summary judgment, we
take as true all evidence favorable to the non‑movant, and we make all
reasonable inferences in the non‑movant=s favor.  Ortiz
v. Collins, 203 S.W.3d 414, 419B20 (Tex. App.CHouston [14th
Dist.] 2006, no pet.).  If the movant=s motion and
summary‑judgment evidence facially establish its right to judgment as a
matter of law, the burden shifts to the non‑movant to raise a genuine
issue of material fact sufficient to defeat summary judgment.  Hirschfeld
Steel Co. v. Kellogg Brown & Root, Inc., 201 S.W.3d 272, 277 (Tex. App.CHouston [14th
Dist.] 2006, no pet.).  In a Rule 166a(i) no‑evidence summary judgment,
the movant represents that no evidence exists as to one or more essential
elements of the non‑movant=s claims, upon
which the non-movant has the burden of proof at trial.  See Tex. R. Civ. P. 166a(i).  The non‑movant
must then present evidence raising a genuine issue of material fact on the
challenged elements.  See id.  A fact issue exists if the evidence Arises to a level
that would enable reasonable and fair‑minded people to differ in their
conclusions.@  King Ranch, Inc. v. Chapman, 118 S.W.3d 742,
751 (Tex. 2003) (quoting Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d
706, 711 (Tex. 1997)).  If the evidence does no more than create a mere surmise
or suspicion of fact, less than a scintilla of evidence exists, and summary
judgment is proper.  See Transp. Ins. Co. v. Faircloth, 898 S.W.2d 269,
282 (Tex. 1995); Macias v. Fiesta Mart, Inc., 988 S.W.2d 316, 317 (Tex.
App.CHouston [1st
Dist.] 1999, no pet.).  A respondent is not required to marshal its proof to
defeat a no‑evidence motion for summary judgment; it need only point out
evidence raising a fact issue on the challenged elements.  Tex. R. Civ. P. 166a(i) cmt. (1997). 
When, as here, a trial court=s order granting summary judgment does not
specify the grounds upon which it relied, we must affirm the summary judgment
if any of the summary judgment grounds are meritorious.  FM Props. Op. Co.
v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).

A.  Construction of the Agreements








In their second issue, appellants claim the trial court
erred to the extent it granted summary judgment based on appellees= claim that
unsatisfied conditions precedent contained in the Agreements precluded
appellants= rights to a portion of the settlement proceeds. 
Specifically, appellants contend that the Agreements do not impose conditions
precedent to their recovery of a portion of the settlement proceeds, but that
even if they impose conditions precedent, performance of those conditions
should be excused under various theories.

In construing a contract, our primary concern is to ascertain
and give effect to the intentions of the parties as expressed therein.  Kelley‑Coppedge,
Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998).  To ascertain
the parties= true intentions, we examine the entire contract in an
effort to harmonize and give effect to all of its provisions so none will be
rendered meaningless.  MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,
995 S.W.2d 647, 652 (Tex. 1999).  Whether a contract is ambiguous is a question
of law for the court.  Heritage Res., Inc. v. NationsBank, 939 S.W.2d
118, 121 (Tex. 1996).  A contract is ambiguous when its meaning is uncertain
and doubtful or is reasonably susceptible to more than one interpretation.  Id. 
However, when a written contract is worded so that it can be given a certain or
definite legal meaning or interpretation, it is unambiguous, and the court
construes it as a matter of law.  See Am. Mfrs. Mut. Ins. Co. v. Schaefer,
124 S.W.3d 154, 157 (Tex. 2003). 








Because of their harshness in operation, conditions
precedent are not favored in the law.  Hirschfeld Steel Co., 201 S.W.3d
at 281.  To make performance specifically conditional, a term such as Aif,@ Aprovided that,@ Aon condition that,@ or some similar
phrase of conditional language normally must be included.  Id.  If no
such language is used, the terms typically will be construed as a covenant in
order to prevent a forfeiture.  Id.  Though there is no requirement that
such phrases be utilized, their absence is probative of the parties= intention that a
promise be made, rather than a condition imposed.  Id.  In construing a
contract, forfeiture by finding a condition precedent is to be avoided when
another reasonable reading of the contract is possible, when the intent of the
parties is doubtful, or when a condition would impose an impossible or absurd
result.  Criswell v. Eur. Crossroads Shopping Ctr., Ltd., 792 S.W.2d
945, 948 (Tex. 1990); Hirschfeld Steel Co., 201 S.W.3d at 281; see
also Hohenberg Bros. Co. v. George E. Gibbons & Co., 537 S.W.2d 1, 3
(Tex. 1976).  However, Texas courts have recognized that:

[a] contract or promise to pay may be restricted to a particular fund,
so as to make the raising . . . of the fund a condition precedent to the
liability, and in such case the promise cannot be enforced until the fund is
realized . . . [s]o [that] where the contract . . . [states] that the creditor
shall look to a particular fund, he cannot, on the failure of such fund not
attributable to the fault of the debtor, hold the debtor personally
responsible.

City
of Seymour v. Mun. Accept. Corp., 96 S.W.2d 814, 816 (Tex. App.CDallas 1936, writ
dism=d by agreement)
(quoting 13 C.J. 631, ' 701) (holding that contract with city
limiting source of payment to net revenues of light plant created a condition
precedent to city=s liability where the contract stated the
debt was Apayable only from the revenues of the Light Plant@); see also
Clear Lake City Water Auth. v. Kirby Lake Dev., 123 S.W.3d 735, 745 (Tex.
App.CHouston [14th
Dist.] 2003, pet. denied) (citing City of Seymour and holding
that where contract only obligated city to repay contractor with bond funds
approved by voters for that particular purpose, contractor could not look to
other funds discussed in contract for payment); McWilliams v. Gilbert,
715 S.W.2d 761, 763B64 (Tex. App.CHouston [1st
Dist.] 1986, no writ) (holding that indemnity agreement unambiguously
restricted general partners= reimbursement from partner to designated
specific source).

Though we construe the contract as a whole, the following
excerpts from the Agreements are particularly pertinent to our analysis:

2.  Obligations

[ADT] hereby grants, conveys and assigns to [appellants] an interest
in the net profits of [ADT] earned substantially from operations conducted by
the [TJE] (a ANet Profits Interest@), which shall be equivalent to the
following membership interests in ADK from time to time:

(i)      Before: Payout/TDL, Payout/Delcon, Payout/NIR,
Payout/OPIC: 0[]%








(ii)      After: Payout/TDL; and Before: Payout/Delcon,
Payout/NIR, Payout/OPIC: 0.095635040%

 . . .

The above terms for APayout@ are defined in the Limited
Liability Company Agreement of TDL.  Exhibits 1‑5 show the Net Profits
Interest of Walston from time to time.

The Limited Liability Company
Agreement of TDL defines APayout/TDL@ as follows:

APayout/TDL@ shall occur at such time as each
Member shall receive, solely from its Interest in the net distributable
proceeds of reimbursements pursuant to the Distribution Agreement (defined as AFinal Amount@ in the Disbursement Agreement)
and/or proceeds ultimately resulting from the [TJE] operations, an amount equal
to the moneys expended or incurred by such members and their respective predecessor‑in‑interest
pursuant to the Study Group Agreement, as noted in Section 4.03 (a), (d), (e),
and (f), as adjusted pursuant to Sections [sic] 4.03(g).  Such amounts shall
constitute the return to the Members of preformation expenditures under Treas.
Reg. ' 1.707‑4(b). (Italics
omitted).

The Net Profits Agreements continue
in relevant part as follows:

4.  Terms of Net Profits Interest

[T]he Net Profits Interest is exclusively an interest in
net profits, as herein defined, and [appellants] shall look exclusively to
revenues earned by the [TJE] and distributed ultimately to [ADT] through ADK
and TDL for the satisfaction and realization of the Net Profits Interest.  As a result of the assignment of
a Net Profits Interest, [appellants] shall have an economic interest in the
profits derived from the [TJE] and paid to ADK in proportion to OPIC, TDL, and
NIR.

. . . 

(1)     Into the net profits account shall be credited an amount equal
to the percentage of Walston=s then current equivalent membership interest in ADK
pursuant to Paragraph 2 above from [ADT]=s share of the proceeds received by [ADT] as a result of the [TJE]
conducting the following operations:








a.       The sale of all oil, gas, or other hydrocarbons by the [TJE]
or its designee which proceeds thereof are received by ADK and ultimately
distributed to [ADT]. 

b.       The sale and/or rental of any personal property or equipment
sold by the [TJE] where the proceeds thereof have been distributed ultimately
to [ADT];

c.       Insurance proceeds collected by the [TJE] and distributed
ultimately to [ADT];

d.       All judgments and claims collected by the [TJE] where such
funds so collected are distributed ultimately to [ADT]; and

e.       Any benefit enuring to [ADT] by virtue of its ownership
interest in the [TJE] ultimately through ADK and TDL, excluding always,
however, the proceeds of the sale of all or any part of or interest in [ADT] in
whole or in part, where such sale is subject to this Net Profits Interest. 
(Emphasis added).

The parties dispute whether paragraphs two and four impose
conditions precedent and, if they do, whether performance of them should be
excused under various theories.  Having carefully reviewed the Agreements in
their entirety, we conclude that the paragraphs grant appellants the right to a
limited interest in a particular fund: post‑APayout/TDL@ net profits.  See
McWilliams, 715 S.W.2d at 763B64 (holding that
indemnity agreement unambiguously restricted general partners= reimbursement
from partner to designated specific source); see also City of Seymour,
96 S.W.2d at 816B17 (holding that contract with city
limiting source of payment to net revenues of light plant created a condition
precedent to city=s liability where the contract stated the
debt was Apayable only from the revenues of the Light Plant@).  In other
words, paragraph two of the Agreements imposes an unsatisfied condition
precedent to appellants= recovery, as discussed below.  Because
the trial court=s grant of summary judgment as to
appellants= declaratory judgment and breach of contract actions
was meritorious based on the condition precedent contained in paragraph two, we
do not address whether paragraph four also imposes an inexcusable condition
precedent.








Assuming for purposes of this analysis that appellants
raised a fact issue as to whether the settlement proceeds fall under the
language of paragraph four, section one, subsection (e) as a Abenefit enuring to
ADT by virtue of its ownership interest in the [TJE],@ the Agreements
only entitle appellants to an interest in post‑APayout/TDL@ net profits under
paragraph two.  Indeed, that section is the touchstone for what appellants are
entitled to under the express terms of paragraph four, section one.  Appellants
presented no evidence that the proceeds sought were post‑APayout/TDL@ net profits,
i.e., that they have any interest in the settlement proceeds.  Rather,
they assert that we should avoid construing the APayout/TDL@ requirement as a
condition precedent because (1) it is not a condition precedent on its face;
(2) it would impose an absurd result; (3) it would impose an impossible result;
and (4) it would result in an extreme forfeiture.  We will address each of these
arguments in turn.

First, appellants contend that APayout/TDL@ was not a
condition precedent on its face.  We disagree.  The language and structure of
paragraph two is clearly conditional.  It states that, A[b]efore []
Payout/TDL,@ appellants have no interest in net profits (A0[]%@) but that
appellants have some interest in net profits Aafter []
Payout/TDL.@  See Hirschfeld Steel Co., 201 S.W.3d at 281
(stating that the inclusion of conditional language denotes a condition
precedent).  This language, and the flow charts in AExhibits 1B5"
(referenced in paragraph two and attached to the Agreements), show that the
parties clearly limited appellants= rights under the
contract to an interest in post‑APayout/TDL@ net profits.  See
Clear Lake City Water Auth., 123 S.W.3d at 745; City of Seymour, 96
S.W.2d at 816.  Under The Limited Liability Company Agreement of TDL referenced
in the Agreements, APayout/TDL@ occurs when TDL
members receive a full return of preformation expenditures from distributable
proceeds or proceeds from TJE operations, as defined therein.  The non‑satisfaction
of the APayout/TDL@ condition
precedent means appellants are not entitled to an interest in the settlement
proceeds because they are pre‑APayout/TDL@ funds, and
therefore outside the class of funds to which appellants have a right.  See
Clear Lake City Water Auth., 123 S.W.3d at 745; McWilliams, 715
S.W.2d at 763B64; City of Seymour, 96 S.W.2d at 816.








Second, appellants argue that reading the APayout/TDL@ requirement as a
condition precedent would impose an absurd result.  We decline to enforce a
condition precedent when the risk the condition was intended to protect against
is obviated under the circumstances presented at the time enforcement of the
condition is sought.  See Vector Indus., Inc. v. Dupre, 793 S.W.2d 97,
101 (Tex. App.CDallas 1990, no pet.).  Here, there is no showing that
the risk which the condition was presumably intended to protect againstCappellants having
a claim to net profits received by appellees before recoupment of preformation
expenditures through receipt of the type of funds contemplated under the L.L.C.
Agreement of TDLCwas obviated.  On the contrary, appellants
agreed to be bound by the Agreements= terms, including
the clear limitation of their rights to post-Payout/TDL funds.  We fail to see
how it would impose an absurd result to enforce the terms of the contract when
the very risk appellants agreed to take on comes to fruition.  We therefore
decline to hold that enforcement of the condition precedent would impose an
absurd result.

Third, appellants rely on appellees= admission that
the acts of Halliburton in the underlying lawsuit made it impossible for
appellees to develop the field in accordance with their business plan to
contend that (1) the APayout/TDL@ condition is
impossible to satisfy, (2) the Agreements are not performable in the future,
and (3) as a result we should excuse the non‑performance of APayout/TDL.@  We disagree.








We will excuse the nonperformance of a condition precedent
that is objectively[2]
impossible to satisfy if (1) occurrence of the condition is not a material part
of the exchange for the promisor=s performance, and
(2) the discharge of the promisor would operate as an extreme forfeiture of the
promisee=s rights under the
contract.  See Sammons Enters., Inc. v. Manley, 540 S.W.2d 751, 755B56 (Tex. App.CTexarkana 1976,
writ ref=d n.r.e.); 49
David R. Dow & Craig Smyser, Texas Practice: Contract Law ' 7.12 (2005)
(noting that condition precedent that is objectively impossible to
satisfy may be excused).  The fact that development in accordance with
appellees= business plan was rendered impossible does not raise
a genuine issue of material fact as to whether APayout/TDL@ is objectively
impossible.  Non-satisfaction of the condition precedent here does not mean
that if post‑APayout/TDL@ funds are
available at some future time through development of the field under some
alternative business plan, or through another means under paragraph one,
section four, subsections (a)B(d), appellants will not receive some
interest in net profits from those funds.  See Clear Lake City Water Auth.,
123 S.W.3d at 745.  Therefore, appellants= evidence does not
raise a genuine issue of material fact,[3]
but at most a mere suspicion as to whether APayout/TDL@ is objectively
impossible.  See Transp. Ins. Co., 898 S.W.2d at 282 (Tex. 1995). 
Because the condition precedent is not objectively impossible to satisfy, we
need not address whether either prong required to excuse impossible conditions
precedent exists here.








Fourth, appellants assert that we cannot enforce the
conditions precedent in the Agreements because it would impose an extreme
forfeiture of their rights.  Again, we disagree.  The discharge of appellees in
this instance would not operate as a forfeiture of appellants= rights under the
contract, because, as discussed above, appellants have no interest in pre‑APayout/TDL@ net profits, and
therefore no rights to the settlement proceeds.  See City of Seymour, 96
S.W.2d at 816 (promisee had no right to demand payment from funds other than
the particular, limited fund agreed to).  The fact that the settlement proceeds
are outside the funds to which appellants are entitled does not mean that
appellants have lost their right to receive payment when the condition
precedent is satisfied and post-APayout/TDL@ funds become
available.  See Clear lake City Water Auth., 123 S.W.3d at 745.  As a
result, enforcement of the condition precedent in this instance does not result
in a forfeiture of appellants= rights.

Construing the Agreements as a matter of law, we hold that
they unambiguously impose an unsatisfied, inexcusable condition precedent. 
Therefore, the trial court did not err to the extent it granted appellees= motion for
summary judgment as to appellants= declaratory
judgment and breach of contract[4]
claims under the Agreements.[5] 
We overrule appellants= second issue, and subissue one of
appellants= fifth issue regarding appellants= breach of
contract claims.[6]








B.  Breach of Fiduciary Duty and Other Counterclaims

In the remaining subissues of their fifth issue, appellants
assert that the trial court erred in granting summary judgment on their
counterclaims for breach of fiduciary duty, conversion, estoppel, unjust
enrichment, breach of the duty of good faith and fair dealing, fraud, negligent
misrepresentation, constructive fraud, money had and received, assumpsit,
quantum meruit, and constructive trust.








Appellants assert, without citation to the record, that
there are genuine issues of material fact as to whether (1) appellees owed them
a fiduciary duty as co-investors in the TJE, and (2) appellees breached that
duty by failing to comply with the Agreements and Participation Agreements.  In
support of their breach of fiduciary duty claims, appellants cite Rankin v.
Naftalis, 557 S.W.2d 940 (Tex. 1977).  However, Rankin would
establish fiduciary duties only upon a finding of joint venture.  Hamilton
v. Texas Oil & Gas Corp., 648 S.W.2d 316, 321 (Tex. App.CEl Paso 1982, writ
ref=d n.r.e.); Cont=l Res., Inc. v. 
PXP Gulf Coast, Inc., No. CIV-04-1681-F, 2006 WL 2865509, at *12B13 (W.D. Okla.
Oct. 5, 2006) (citing Hamilton).  As a threshold matter, appellants
present no argument that they were joint venturers with appellees.  Instead,
they assert, as they did in their response to appellees= summary judgment
motion, that a fiduciary relationship arose out of their status as co-investors
with appellees.  However, they fail to explain how that status creates a
fiduciary relationship under Rankin.  Moreover, one of the elements
required to establish a joint venture is a showing that the parties have a
mutual right of control or management of the enterprise.  Ayco Dev. Corp. v.
G.E.T. Serv. Co., 616 S.W.2d 184, 186 (Tex. 1981) (per curiam); Texas
Dep=t of Family & Protective Servs. v.
Atwood, 176 S.W.3d 522, 535 (Tex. App.CHouston [1st
Dist.] 2004, pet. denied).  The Agreements specifically state that appellants
will not have control rights and that AADK shall have
exclusive management and control of the exploration, development and operation
of the JE.@  Also, the Participation Agreements specifically
state (1) that appellants are not granted any right not granted in paragraphs
three and four, which do not include rights of management or control, and (2)
that the administrative member of ADT shall have exclusive management and
control of the operations of ADT.  Thus, the language of the contracts show
that the element of mutual control or management is not present here.  See
Hamilton, 648 S.W.2d at 321; Cont=l Res., Inc., 2006 WL 2865509,
at *14.  But even if appellants had shown that their co-investor relationship
with appellees established a fiduciary relationship, or that they were
joint venturers with appellees, their argument still fails as a matter of law
because, as discussed above, appellants are not entitled to a portion of the
settlement proceeds.  We therefore hold that the trial court did not err in
granting summary judgment as to appellants= breach of
fiduciary duty counterclaim.  We overrule the remaining subissues of appellants= fifth issue.[7]

III. 
Evidentiary Challenge to Van Dyke=s Affidavit

In their first issue, appellants contend that the trial
court erred in overruling their objections to various portions of Van Dyke=s affidavit, which
was attached in support of appellees= motion for
summary judgment.  Appellants= brief challenges the trial court=s ruling on their
objections to Van Dyke=s affidavit in five subissues.








In subissue one, appellants challenge Van Dyke=s affidavit
statement that Aneither ADPI nor [Van Dyke] were parties
to any of these agreements@ as legally conclusory, impermissibly
factually determinative, or both.  We review the trial court=s decision to
consider that evidence for an abuse of discretion.  See Owens-Corning
Fiberglass Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).  An affidavit
that merely states a legal conclusion is incompetent to support or refute a
motion for summary judgment.  See Mercer v. Daoran Corp., 676 S.W.2d
580, 583 (Tex. 1984).  However, even if the trial court errs by considering
such evidence at summary judgment, we will not reverse a trial court=s erroneous
evidentiary ruling unless the party requesting reversal can demonstrate that
the error probably caused the rendition of an improper judgment.  See Tex. R. App. P. 44.1; Bader v.
Dallas Cent. Appraisal Dist., 139 S.W.3d 778, 783B84, (Tex. App.CDallas 2004, pet.
denied).

Assuming, without deciding, that the trial court erred in
considering the affidavit statement challenged above, appellants do not show,
and we decline to hold, that the trial court=s consideration of
the affidavit probably caused the trial court to render an improper judgment. 
First, the challenged evidence would only go to whether ADPI and Van Dyke were
proper parties to the suit, but we have already determined the trial court
properly granted summary judgment in appellees= favor as to
appellants= declaratory judgment and contractual claims,
obviating the need to address that issue.  Moreover, attached to the affidavit
was a copy of one of the Agreements, which only names appellee ADT as a party
(as do they all).  Other copies of the Agreements, containing identical
language, are included throughout the summary judgment record.  Therefore, even
if the trial court erred in considering the challenged evidence, we find it
unlikely that such error caused the trial court to render an improper
judgment.  Because we conclude that any error in the trial court=s judgment was
harmless, we overrule subissue one.  Appellants= first issue is
overruled.[8]

 

 

 

 








Having overruled all of appellants= issues, we affirm
the trial court=s judgment.

 

 

 

 

/s/          Leslie B.
Yates

Justice

 

 

 

 

Panel consists of Justices Yates,
Guzman, and Sullivan.









[1]  Appellants Gerald Walston and Ben Morris also
entered into two other sets of contractsCthe
ASmith Participation Agreements@ and the AParticipation
Agreements@Cand asserted claims under those agreements in the
trial court.  Appellants present no argument here regarding the Smith
Participation Agreements, thereby waiving their claims under those contracts.  See
Tex. R. App. P.  38.1(e),
(h); Tex. Nat=l Bank v. Karnes, 717 S.W.2d 901, 903 (Tex. 1986) (holding that Athe court of appeals may not reverse a trial court=s judgment in the absence of properly assigned error@);  Graybar Elec. Co., Inc. v. LEM & Assocs.,
L.L.C., 252 S.W.3d 536, 549 n.16 (Tex. App.CHouston [14th Dist.] 2008, no pet.).  Appellants= claims under the Participation Agreements are
discussed in footnote six below.





[2]  In arguing that supervening impossibility may excuse
performance of a condition precedent, appellants wrongly assume this is a
situation of objective, rather than subjective, impossibility.  Subjective
impossibility does not excuse performance under Texas law.  See Janak v.
FDIC, 586 S.W.2d 902, 906 (Tex. App.CHouston
[1st Dist.] 1979, no writ); see also 49 David R. Dow & Craig Smyser,
Texas Practice: Contract Law '
7.12 (2005) (noting that subjective impossibility does not excuse performance).





[3]  We note that we arrive at this conclusion
independently of paragraph four of Van Dyke=s
affidavit, which appellants challenge as incompetent summary judgment
evidence.  Because our construction of the contract as containing inexcusable
conditions precedent requires no reliance on that evidence, and because we hold
that appellants failed to present any evidence raising a genuine issue of
material fact as to whether the condition precedent is objectively impossible
to perform, we decline to hold that consideration of that evidence probably
caused the trial court to render an improper judgment.  See Tex. R. App. P. 44.1; Bader v.
Dallas Cent. Appraisal Dist., 139 S.W.3d 778, 783B84 (Tex. App.CDallas
2004, pet. denied).  Any error by the trial court in considering that evidence
was therefore harmless.





[4]  In their third issue, appellants assert that the
trial court erred in granting summary judgment on their claim under a
completely different theory:  that appellees breached the agreements by suing
Halliburton et al., an action which appellees claim violated the agreements. 
However, appellants have waived this theory by presenting it for the first time
on appeal.  See Tex. R. App. P. 166(a)(c)
(AIssues not expressly presented to the trial court by
written motion, answer or other response shall not be considered on appeal as
grounds for reversal.@); City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 677 (Tex. 1979); Physicians, Surgeons & Hosps. Prof=l Servs., Inc. v. Tex. Hosp. Ins. Exch., No. 03‑01‑00373‑CV, 2002 WL
1727396, at *2 (Tex. App.CAustin July 26, 2002, no pet.) (not designated for
publication).





[5]  Because we hold that the trial court did not err in granting summary
judgment as to appellants= declaratory judgment and breach of
contract claims, we need not address appellants= fourth issue concerning whether ADPI and Van Dyke
were proper parties to those actions.





[6]  As mentioned in footnote one above, appellants Gerald
Walston and Ben Morris also asserted claims below under their AParticipation Agreements,@ which they have mentioned only in passing in their
responsive motion below and in their brief on appeal.  Nevertheless, we have
reviewed those contracts carefully and find that they unambiguously grant
appellants a Alimited participating interest@ in any ADistributions@ from the TJE to ADT through ADK and TDL.  However,
nothing in those contracts, or in the definition of ADistributions@
under the TDL regulations, suggests they grant appellants an interest in the
settlement proceeds at issue, and appellants present no evidence creating a
genuine issue of material fact as to whether the settlement proceeds involved
here fall within their AL.P. Interest@
under the Participation Agreements.  Because the unambiguous language of the
Participation Agreements and the evidence presented by appellants present
nothing suggesting those contracts entitled appellants to a share of the
settlement proceeds at issue, the trial court did not err in granting summary
judgment as to the claims asserted thereunder.  See Bendigo v. City of
Houston, 178 S.W.3d 112, 113B14
(Tex. App.CHouston [1st Dist.] 2005, no pet.); Clear Lake City
Water Auth., 123 S.W.3d at 745; McWilliams, 715 S.W.2d at 763B64; City of Seymour, 96 S.W.2d at 816. 
Appellants= arguments in that regard are overruled.





[7]  Appellants have waived their remaining extra‑contractual
counterclaims by failing to cite any legal authority or evidence in the record,
and failing to present any legal argument supporting their contentions.  See
Tex. R. App. P. 38.1(h); Trenholm
v. Ratcliff, 646 S.W.2d 927, 934 (Tex. 1983) (stating that issues must be
supported by argument and authorities, and if not so supported, are waived); Rivera
v. Countrywide Home Loans, Inc., 262 S.W.3d 834, 841B42 (Tex. App.CDallas
2008, no pet.) (applying briefing waiver to challenge of trial court=s grant of summary judgment denying claims in contract
dispute).





[8]  We need not address subissues two through five
because they are inadequately briefed.  In each subissue, appellants either
fail to cite any legal authority in support of those arguments, fail to point
us to the specific statements challenged within the affidavit paragraphs
complained of, simply state the number of the challenged affidavit paragraph
and then state that the entire paragraph constituted a legal conclusion or
factual determination, or some combination thereof.  See Tex. R. App. P. 38.1(h); Stewart v.
Sanmina Tex., L.P., 156 S.W.3d 198, 207 (Tex. App.CDallas 2005, no pet.).